**Abdula AMIN, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 84–24.

Supreme Court of Wyoming.

Feb. 21, 1985.

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel; and Martin J. McClain, Asst. Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division; John Renneisen, Senior Asst. Atty. Gen., and Mary B. Guthrie, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN, and CARDINE, JJ.

BROWN, Justice.

Appellant, Abdula Amin, was convicted by a Laramie County jury of aiding and abetting aggravated robbery. The case against Abdula Amin was consolidated for trial with the companion case of *State v. Valerie Yvonne Amin,* appellant's wife. According to appellant the issues are:

I. "Whether appellant's consent to the search of his car cannot be said to have been voluntary where he was not informed that he was a suspect in another matter and the search would be used to gather evidence linking him to that crime.

II. "Whether it was prejudicial error for the trial court to permit joinder and allow evidence to be admitted against appellant in violation of Section 1-12-104, W.S.1977.

III. "Whether the trial court's refusal to allow appellant's trial counsel a full and effective cross-examination of Valerie Amin deprived appellant of his constitutional right to confront witnesses against him.

IV. "Whether the trial court's decision not to instruct the jury on lesser-included offenses was error.

V. "Whether during the hearing on Appellant's status as an habitual criminal, he was denied his constitutional right to confront witnesses against him."

We will affirm.

During the early morning hours of July 10, 1983, Valerie Yvonne Amin was engaged in prostitution in the environs of the Lamp Lounge, a Cheyenne alehouse. At this time she approached James Whitehead, and offered her services for a modest fee. According to Whitehead he declined the proposition stating his reasons. At that point he was abducted by Mrs. Amin at gun point and forced to drive his car to a remote area about six blocks from the lounge. In this isolated area Whitehead testified that he was beaten and robbed by a man, later identified as Abdula Amin. According to Mrs. Amin, Whitehead accepted her offer, but then demanded a refund and attempted to forceably recoup the fee he had paid her. Mrs. Amin stated that her husband was in a car nearby but did nothing more than extricate her from Whitehead's car; however, she said another man who was with appellant approached Whitehead's car, but Mrs. Amin did not know what happened after that.

I

In his first assignment of error appellant alleges that the search of his car was ille-

gal. Eleven days after Whitehead was robbed appellant was in custody in connection with a sexual assault charge, an offense not related to the July 10 robbery. At that time he was questioned by Cheyenne police officer, Donna Riekens. She told appellant the police "had a report from a male who had indicated that Mr. Amin had taken him to a secluded area and had sexually assaulted him," and "also informed him [appellant] that in the report the victim stated that he had used a weapon, a gun." Appellant denied the allegations and denied that he had any weapon. Riekens then asked for permission to search Amin's car and "may have said that I [she] wanted to look for a weapon." Appellant gave oral permission for a search and then signed a form entitled, "Waiver of Search Warrant." After Officer Riekens had obtained the consent to search, Detective Mel Fleharty told her that appellant was a suspect in an armed robbery incident that occurred July 10.

Appellant complains that the consent to search his car was vitiated because it "was obtained by guile and trickery." He cites *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) in support of this contention. Appellant does not contend that the police officers exceeded the limits of the "Waiver of Search Warrant." The only expressed limitations of the waiver form were that the search be made by police officers, and only on appellant's vehicle. Otherwise, the waiver was unrestricted. The second paragraph of the waiver provided:

"I further authorize and grant permission to the said officers to seize any letters, papers, materials, *or any other articles whatsoever* which they may desire to seize, and I agree that the said officers may retain such letters, papers, materials *or other article whatsoever* for use as evidence in *any* criminal action that may be instituted against me." (Emphasis added.)

At the suppression hearing appellant testified that he did not read the waiver and that he signed it only because he was told the police "were looking for a gun and gun only." Officer Riekens testified that she did not say that she was only looking for a weapon.

Appellant speculates that at the time Officer Riekens questioned him about the sexual assault charge she also knew that he was a suspect in the July 10 aggravated robbery case and that she was also trying to collect evidence for the robbery case. This suspicion is not borne out by the record. So far as the record reveals, Riekens learned that appellant was a robbery suspect when Detective Fleharty told her, after she had obtained the waiver of search warrant from appellant. It is not significant that Detective Fleharty speculated that Riekens knew that appellant was a robbery suspect before he told her.

■ The test for determining whether the consent for a search is valid was established in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and has been followed by this court in *Stamper v. State*, Wyo., 662 P.2d 82 (1983), and *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981). Specifically, the test requires an inquiry into the "voluntariness" of the consent in light of "the totality of the circumstances." *Stamper v. State*, supra.

■ To determine whether a consent was given voluntarily the totality of the circumstances must be considered, such as absence of coercion by the interrogating officer in obtaining consent and a valid reason for the search. *Schneckloth v. Bustamonte*, supra. If a defendant permits a warrantless search in the mistaken belief there is nothing to incriminate him where the search will take place, the search is voluntary. *United States v. Smith*, 308 F.2d 657 (2nd Cir.1962). The state has the burden of establishing by a preponderance of the evidence that the consent to search was voluntary. *Stamper v. State*, supra. Such determination is a question of fact to be decided in light of all the circumstances of the case. *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096 (3rd Cir.1970).

A consent to search may be restricted in scope to designated items, restricted to certain places, or limited in purpose. A time limitation or limitation on persons permitted to conduct the search may be a further restriction on a consent search. A search based on consent is proper so long as the search is kept within the bounds of the actual consent. Police officers may not procure a waiver of search warrant on the representation that they are looking for certain named items and then use that consent as a license to conduct a general search for whatever might be discovered. *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir.1971); and *State v. Lerch,* 63 Or.App. 707, 666 P.2d 840 (1983).

On appeal the evidence is viewed in the light most favorable to the prevailing party. *Parkhurst v. State,* supra. The evidence most favorable to the state was that Officer Riekens talked to appellant about him being a suspect in a sexual assault case, and obtained appellant's unrestricted consent to search his automobile and seize any material for use in any criminal action. After obtaining a waiver of search warrant, Officer Riekens learned that appellant was a suspect in an aggravated robbery case, and also learned of the items the police department was looking for in that case. When the consent search of the automobile was conducted, Riekens, accompanied by a lab technician, found and seized a cassette player and a wig; afterwards Officer Riekens told appellant what had been seized. Appellant did not object or comment. The cassette player and wig were used in evidence in the aggravated robbery case. Considering this evidence, which the trial court was entitled to believe, there is no indication of trickery, deceit or guile used by the police officer in order to obtain a waiver of search warrant. It was not error to admit into evidence the items seized in the search.

## II

In his second assignment of error appellant contends that it was error to join his case with his wife's case for trial and admit her testimony in evidence so far as it tended to incriminate him. Mr. and Mrs. Amin were charged in separate informations with participating in the same acts or series of acts constituting aggravated robbery.

Rule 12, Wyoming Rules of Criminal Procedure, provides:

"The court may order two (2) or more indictments or informations or both to be tried together if the offenses, and the defendants, if there is more than one (1), could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

Rule 11(b), W.R.Cr.P., allows two or more defendants to be charged in the same information if they are alleged to have participated in the same acts or transactions or in the same series of acts or transactions constituting an offense or offenses. Under this rule it is not required that all defendants be charged in each count of the information.

In Wright, Federal Practice and Procedure: Criminal § 213, p. 766 (1982), discussing joinder of defendants under Rule 13, Federal Rules of Evidence, which is identical to our Rule 12, it is noted:

"* * * The strongest case for ordering a joint trial is where the evidence to support the charges against the several defendants is virtually identical."

In this case the same evidence produced against appellant in the joint trial would have been presented against him if he had been tried separately. Joint trials serve the public interest by expediting the administration of justice. Joint trials of defendants charged with committing the same offense or aiding or abetting in the commission of the offense are the rule rather than the exception. *Jasch v. State,* Wyo., 563 P.2d 1327 (1977).

There must be compelling reasons for separate trials. Joint trials are a matter of discretion with the trial court and its determination is not subject to reversal unless clear abuse is shown. *Jasch v.*

*State,* supra. The trial court did not abuse its discretion in ordering a joint trial. Appellant's case was properly tried with the case of *State v. Valerie Yvonne Amin.*

Appellant directs our attention to § 1-12-104, W.S.1977, which provides:

"No husband or wife shall be a witness against the other except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceedings by one against the other. They may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist."

Counsel for appellant at a motion hearing before trial opposed the state's motion to consolidate the two Amin cases for trial. Counsel argued several theories in support of opposition to a joint trial, but did not assert the marital testimonial privilege.

Valerie Yvonne Amin testified in her own defense at trial. During her testimony on direct examination she told the jury that her husband, appellant, rescued her when Mr. Whitehead tried to forcibly recover the $60 he had paid her. Appellant did not object to this testimony. When Mrs. Amin was being cross-examined by the state she denied having access to a gun about the time of the robbery involved here. Appellant objected to the admission into evidence of a prior inconsistent statement made by Valerie which indicated she did have a gun. Appellant's objection was, "I'm going to object to any statement where she says that he had a gun, because that violates the statute on husband and wife."

The court placed some restriction on the use of the prior inconsistent statement, and Mrs. Amin was then asked: "In that statement at that time, you told Officer Riekens you did have a black and white .22, 'but I haven't seen it for a couple of days,' didn't you?" Valerie answered, "Yes."

Appellant contends that his wife was improperly allowed to testify against him. In his brief on appeal he says, "Specifically, she placed her husband at the scene of the crime and she admitted making a prior statement to the police that she and her husband had access to a gun." The portion of Valerie's prior statement brought to the jury's attention did not indicate that appellant had access to a gun; only Valerie's access to a gun was brought to the attention of the jury.

In *State v. Trevino,* Utah, 574 P.2d 1157 (1978), a husband and wife were tried jointly and both testified. In commenting on a prohibition against a spouse testifying for or against the other, the court said:

"* * * It is not pointed out in the brief just how the witness testified for or against the other; but even if there were some bits of evidence against the other spouse, it could not be excluded so long as it tended to show nonguilt on the part of the one giving the testimony." Id., at 1158.

■ In the case before us, Mrs. Amin's testimony was exculpatory, both as to her and her husband. She specifically denied that either had a gun during the encounter with Whitehead or that they were engaged in any wrongdoing. Mrs. Amin's testimony placed appellant at the scene of the crime; however, this evidence came in without objection and was exculpatory. Furthermore, Whitehead, the victim, had previously identified appellant as being at the scene of the crime, and other evidence implicated him in the crime. It was not error to permit Mrs. Amin to testify as she did.

### III

In his third assignment of error appellant complains that he was improperly restricted in the cross-examination of his wife.

Appellant's trial counsel characterizes his examination of Mrs. Amin as cross-examination. Actually this examination was a repetition of Mrs. Amin's prior testimony. After counsel had asked Mrs. Amin about two dozen questions, the judge conferred with counsel at the bench. He said, "* * * I think if you desire to cross-examine the witness, I will certainly permit you to do so, but I do not believe it is proper to have her simply repeat her testimony as a means of reinforcing her direct." Appel-

lant's counsel responded, "What I'm doing—and that's correct, that is part of the motive, quite candidly. The other reason is to get a clarification for myself of the details of direct examination." Eventually the judge ruled, "I don't want you to repeat what she was asked on direct. They have been asked and answered." Counsel then asked about a dozen more questions which elicited exculpatory answers as to both the witness and appellant.

So far as we can tell, the trial judge never restricted appellant's examination of Mrs. Amin insofar as his questions tended to clarify direct testimony or expand direct testimony. The only restriction was a general prohibition against repeating questions asked on direct. No specific question was prohibited. Appellant did not advise the court of any specific question he wanted to ask.

In his brief appellant says:

"The Confrontation Clause of the Sixth Amendment to the United States Constitution and § 10 Art. I of the Wyoming Constitution guarantees an accused the right to confront witnesses against him. The primary interest secured by this right is the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347] (1974). As a result, 'An accused has the right to cross-examine a witness on any matter testified to on his direct examination for the purpose of testing his memory, creditability, knowledge, and accuracy.' *Ball v. State*, 337 So.2d 31, 37 (Ala.[Cr.]App. 1976)."

"The right of cross-examination cannot be substantially restricted. It 'is not satisfied by "token interrogation" and includes the right to fully cross-examine the witness on any material matter which would bear on the creditability of the witness.' *Valentine v. State*, 396 So.2d 15, 17 (Miss.1981)."

■■■ We have no disagreement with the law recited by appellant, but it has minimal, if any, application to the case here. We are not aware of any authority that says a party has an absolute right on cross-examination to repeat the questions asked on direct examination. There is a distinction between a denial of cross-examination and limitation. The right of an accused to confront and cross-examine a witness against him has limitations. The extent and manner of a witness' cross-examination is in the trial court's discretion. A trial court's discretionary ruling on evidence will not be upset except for clear abuse which is appellant's burden to demonstrate. *Buhrle v. State*, Wyo., 627 P.2d 1374 (1981). The trial court has discretion to determine whether to allow repetitive questioning on cross-examination. *State v. Altergott*, 57 Haw. 492, 559 P.2d 728 (1977); and 81 Am.Jur.2d, Witnesses § 511 (1976).

■■■ We have referred to appellant's examination as cross-examination only because that is what he calls it and such examination came after direct which is in the usual sequence of examination; otherwise, it bears little resemblance to cross-examination. Such examination was really an attempt to place exculpatory evidence before the jury for at least the second time. Appellant did not advise the trial court nor this court of any questions that he was not permitted to ask. He only makes the broad complaint that he was restricted in cross-examination, but demonstrates no prejudice. The trial court did not abuse its discretion in restricting repetitive questions. There is no merit to appellant's contention that he was improperly restricted in cross-examination.

### IV

During the instruction conference appellant offered instructions on simple assault, battery, reckless endangering and larceny. He contends that the instructions offered were lesser included offenses. The court refused to give the requested instructions and appellant contends that this was error.

We addressed this identical issue in the companion case, *Valerie Yvonne Amin v. State*, 694 P.2d 119 (Wyo.1985). In the case involving Mrs. Amin she claimed there were

five lesser included offenses and offered instructions on each. Her proposed instructions contained the four lesser-included offenses that appellant here contends should have been given. For purposes of our discussion and disposition of this case, we deem it immaterial that Mrs. Amin was charged as a principal and that appellant here was charged with aiding and abetting aggravated robbery. The same evidence was before the jury in both *Amin cases* and the same legal principles control.

We held in *Valerie Yvonne Amin v. State*, supra, that simple assault, battery and reckless endangering were not lesser included offenses of the crime of aggravated robbery. Our rationale was that aggravated robbery could be committed without committing either simple assault, battery or reckless endangering; and therefore, the test to determine lesser included offenses set out in *Balsley v. State*, Wyo., 668 P.2d 1324 (1983), was not met. We also held in the case of Mrs. Amin, that in addition to simple assault, battery and reckless endangering, which failed the *Balsley* test, there was no evidence to justify giving instructions on these three crimes as well as instructions on larceny.

If not reasonably supported by the evidence, an instruction should not be given based on evidence which at best raises a possibility or conjecture. *Patterson v. State*, Wyo., 682 P.2d 1049 (1984). The trial court should not invite the jury to speculate or compromise by giving lesser included offense instructions that are not rationally supported by the evidence. *Richmond v. State*, Wyo., 554 P.2d 1217 (1976). "The law does not require instructions on all offenses theoretically included in every criminal information based upon the possibility that the jury might simply disbelieve the state's evidence." *State v. Wilson*, 113 Ariz. 363, 555 P.2d 321 (1976).

If the evidence clearly shows that the accused is either guilty or not guilty of the offense charged, it is not necessary for the trial court to give a less-

er-included offense instruction. *Stamper v. State*, supra.

" * * * [A]n instruction on a lesser included offense is justified only when there is evidence upon which the jury could convict of the lesser offense and find that the state had failed to prove an element of the greater offense. [Citation.] The trial court need only give the lesser included offense instruction when the element that distinguishes the two charges is in dispute. Thus, when the evidence is such that the defendant may be found either guilty only of the crime charged or not guilty at all, based on the defense presented at trial, no instruction on a lesser included offense is required. * * * " *State v. Yarbrough*, 131 Ariz. 70, 638 P.2d 737, 740 (1981).

In the case of Mrs. Amin, we said, in conclusion:

"A defendant is entitled to lesser included offense instructions when a rational view of the evidence would permit a finding of guilt of the lesser offense and not guilty of the greater offense. In this case resolution of any of the conflicting evidence in favor of appellant would result in an acquittal, not merely a finding of not guilty of the principal offense, but guilty of one or more lesser offenses. There is no evidence, which if believed by the jury, would result in an acquittal of the principal offenses and a finding of guilty of one or more of the proposed lesser included offenses." *Amin v. State*, supra, at 123–124.

What we said there also applies here. An acquittal of aiding and abetting aggravated robbery and a finding of guilt on a lesser included offense could not rationally be supported by the evidence. The trial court properly refused to give lesser included offense instructions.

**V**

In appellant's final assignment of error he argues that the admission into evidence of court files and records on the issue of appellant's habitual criminal status violated his constitutional right to confront witnesses against him.

After the jury convicted appellant of aiding and abetting an aggravated robbery, his status as an habitual criminal was submitted to the same jury in a separate proceeding. Court documents from Colorado and Wyoming were introduced into evidence showing that appellant had five previous criminal convictions. No witnesses from Colorado testified regarding the four Colorado convictions. The court documents evidencing prior convictions are certificates from the custodians of records in Colorado and Wyoming stating under oath that the records attached to the custodians' certificate were transcripts and copies of the original. When the state offered exhibits evidencing prior convictions, appellant made numerous objections regarding foundation, chain of custody, authentication, relevancy, identity, whether the crime was a felony, hearsay, no showing that the public defender was a lawyer, no showing of adult offense, and no raised seal on the documents.

The exhibits evidencing prior convictions were received in evidence and appellant was determined to be an habitual criminal. The reoccurring objection made by appellant to the exhibits was denial of his right of confrontation. On appeal appellant apparently has abandoned all his objections to the exhibits evidencing prior convictions except the right of confrontation.

We are not certain who appellant maintains should have confronted him. In one argument he says he had the right to be confronted by "people making the statements in this document." He also said he was "denied confrontation of the custodian of this document." Appellant specifically requested his right to "confront people from Colorado in this regard, including, but not limited to, the trial judge and people who can identify this person and this act as being a crime."

Notwithstanding appellant's numerous objections to the documents evidencing prior convictions, so far as we can tell, he did not object at trial to the state's failure to show that the declarant was not available. However, on appeal his main complaint in this assignment of error is that the state failed to show that declarants were not available. He did object on the basis of lack of foundation. That particular objection, however, covers a "multitude of sins" and appellant did not explain to the court which ·particular foundation was deficient.

The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him. * * * " Art. 1, § 10 of the Wyoming Constitution contains the same provision. These constitutional provisions are the basis of appellant's argument that his right to be confronted by witnesses against him was violated. In a proceeding regarding the determination of whether an accused is an habitual criminal, the statute provides that records of previous convictions may be received into evidence.

"In a trial under this article, a duly authenticated copy of the record of previous convictions and judgments against the defendant of any court of record are prima facie evidence of the previous convictions and may be used in evidence against the defendant." § 6–10–203(c), W.S.1977 (June 1983 Replacement).

Rule 803(8), Wyoming Rules of Evidence, specifically provides that public records are not excluded by the hearsay rule. This is true even though the declarant is available as a witness according to the specific language of the rule. It follows, therefore, that it is unnecessary to show that a declarant is unavailable, and unavailability has nothing to do with the admissibility into evidence of properly authenticated public records.

Copies of public records are self-authenticating. Rule 902, W.R.E., provides in part:

"(a) Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

"(1) Domestic Public Documents Under Seal.—A document bearing a seal

purporting to be that of the United States, or any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution."

The exhibits evidencing prior conviction comply with Rule 902. These documents bear the signature and seals of court officials in the states of Colorado and Wyoming and otherwise comply with the rule.

In his brief appellant concedes that the right to confrontation does not preclude the admission of hearsay but contends that the state failed to demonstrate the declarant's unavailability, and therefore, the documents were improperly admitted. In support of appellant's confrontation argument he cites *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981); *Martinez v. State*, Wyo., 611 P.2d 831 (1980). Appellant directs our attention to the following excerpt from *Hopkinson*, at 132–133:

"* * * It is our conclusion that, before hearsay becomes admissible, the Confrontation Clause imposes a burden upon the State in addition to those found under Rule 804(b)(6). The prosecutor is required to establish: (1) that the declarant is unavailable to appear at trial; and (2) that there exists sufficient background information concerning the circumstances under which the hearsay statement was made to provide the jury with an adequate basis to evaluate its veracity."

Appellant's reliance on *Hopkinson, Martinez* and *Mattox* is misplaced. In all of these cases the hearsay problem was discussed in the context of a trial to determine guilt. In the present case the alleged hearsay was in connection with a status determination or the sentencing phase of the trial. Appellant has not cited us any authority that says an accused has the right to confront a declarant in a public record

when the public record is introduced into evidence at a sentencing hearing. We know of no case so holding.

█ More fundamentally, appellant's reliance on these cases is misplaced because in this case we do not have a hearsay problem. As we said before, § 6–10–203(c), W.S.1977, specifically authorizes admission into evidence authenticated copies of public records. Rule 803(8), W.R.E., provides that public records are not excluded by the hearsay rule and Rule 902, W.R.E., provides that certified copies of public records are self-authenticating. Furthermore, under Rule 803(8), public records are admissible in evidence even though the declarant is available as a witness.

We find no reversible error in this case. Affirmed.

ROSE, Justice, specially concurring.

I adhere to my position developed in *Amin v. State*, Wyo., 694 P.2d 119 (1985), that aggravated robbery necessarily includes simple assault where the information charges robbery by the use or exhibition of a deadly weapon or a simulated deadly weapon. The trial court properly refused to instruct the jury on assault in this case, however, since the evidence presented at trial did not support a finding of assault without a taking. See *Balsley v. State*, Wyo., 668 P.2d 1324 (1983). Therefore, I concur with the majority in affirming the trial court's denial of appellant's requested lesser-included-offense instructions.

With respect to appellant's objection to the use of court documents to prove his prior convictions, I agree with the majority that the constitutional right to confront one's accusers does not include the right to confront a declarant in a public record when that record is offered into evidence at a sentencing hearing. The United States Supreme Court has characterized the right of confrontation as a "trial right," *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968), which enables the accused to cross-examine the "witness-

es against him"[1] and permits the jury to observe the witnesses' demeanor and judge their credibility. *Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339–340, 39 L.Ed. 409 (1895). Neither the language nor the purpose of the confrontation clause contemplates a testing of the preparer or custodian of court records which are offered at the sentence-enhancement hearing to establish the defendant's prior convictions.

I do not find determinative of this issue the fact that public records are readily admissible into evidence as an exception to the hearsay rule, regardless of the availability of the declarant. The confrontation clause and the hearsay doctrine encompass different values, so that evidence permissible under one may violate the other. *California v. Green,* 399 U.S. 149, 155–156, 90 S.Ct. 1930, 1933–1934, 26 L.Ed.2d 489 (1970); *Hopkinson v. State,* Wyo., 632 P.2d 79, 132 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). To comply with the confrontation clause, the State must, at a minimum, make a good-faith effort to produce the declarant for trial or establish why such effort would be futile. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *California v. Green,* supra; *Barber v. Page,* supra; *Mattox v. United States,* supra; *Hopkinson v. State,* supra. As noted above, no such showing was required in this case, since appellant's confrontation rights were not implicated at his sentencing hearing. Therefore, I join the majority in affirming the sentence imposed by the district court.

---

**1.** The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution both confer upon the accused the right "to be confronted with the witnesses against him."