Herman CAREY, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 83–197.

Supreme Court of Wyoming.

March 7, 1986.

Rehearing Denied April 14, 1986.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div., John Renneisen, Sr. Asst. Atty. Gen., and Margaret M. White, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The primary issue presented in this appeal is whether prejudicial error occurred because of the admission of prior bad acts on the part of the defendant in a prosecution for sexual assault. Collateral errors are asserted with respect to the failure to give lesser-included offense instructions, the sufficiency of the evidence, the exclusion of evidence concerning the sexual activities of the victim, and an abuse of discretion in sentencing. We conclude that no error occurred with respect to the trial of Herman Carey or the sentence which was imposed, and the judgment and sentence is affirmed.

In his brief Carey states the issues in this way:

"A. The Trial Court erred in admitting Appellant's acquittal on a prior sexual assault charge from Arizona as a prior bad act under Rule 404(b), Wyoming Rules of Evidence:

"1. The evidence was irrelevant.

"2. The prejudicial value of the evidence outweighed its probative value. Comments by the prosecutor regarding the acquittal as being a finding of 'not guilty' but not a finding of 'innocence' were prejudicial and constituted prosecutorial misconduct.

"3. Appellant was deprived of his constitutional rights to be protected against double jeopardy and to be afforded due process and equal protection under the laws.

"4. Assuming arguendo that the evidence was admissible as a prior bad act, prior bad act testimony should parallel

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, and Ann Rochelle, Asst. Public Defender, Casper, for appellant.

* Retired November 1, 1985.

** Retired November 30, 1985.

the confines of Rule 609, Wyoming Rules of Evidence.

"B. The Trial Court erred in admitting the dismissal of the Gillette, Wyoming misdemeanor assault charge against the Appellant as a prior bad act under Rule 404(b), Wyoming Rules of Evidence:

"1. The evidence was irrelevant.

"2. The prejudicial value of the evidence was outweighed by its probative value.

"3. Appellant was denied due process and equal protection under the laws.

"4. Assuming arguendo that the evidence was admissible as a prior bad act, prior bad act testimony should parallel the confines of Rule 609, Wyoming Rules of Evidence.

"C. Evidence of the victim's sexual conduct subsequent to the alleged crime should have been admitted.

"D. The Trial Court erred in its refusal to give Appellant's jury instructions on lesser-included offenses.

"E. There was insufficient evidence as a matter of law upon which the jury could convict the Appellant.

"F. The Trial Court's sentence of Appellant to twenty to twenty-five (20–25) years in the Wyoming State Penitentiary was improper and violative of Appellant's constitutional rights."

The State of Wyoming, in its brief, states the issues to be:

"I. Did there exist a legitimate basis for the court's determination that the evidence of the other sexual assaults was relevant and admissible?

"II. Did the fact that the defendant was acquitted of the 1978 rape charge implicate the double jeopardy clause and thereby render the evidence inadmissible?

"III. Did the prosecution's closing remarks rise to the level of plain error?

"IV. Was the evidence sufficient for conviction?

"V. Is the evidence concerning [the victim's] conduct after the alleged rape incompetent and irrelevant?

"VI. Are the offenses of second degree sexual assault, third degree sexual assault, attempted sexual assault, assault and battery lesser included offenses of sexual assault in the first degree?

"VII. Did the trial court abuse its discretion in sentencing appellant to twenty (20) to twenty-five (25) years?"

Herman Carey and his co-defendant, Kent Seeley, took the victim to a mobile home owned by Seeley early one morning. The three of them went into the mobile home with the victim accompanying Carey and Seeley volitionally but somewhat reluctantly. When they were inside Carey locked the door which they had entered and advised the victim that they were going to have some fun. Carey initiated sexual overtures, and the victim pleaded a need to go to the bathroom. She attempted to lock Carey out, but he held the door so that she could not, and she was unable to leave through the bathroom window. She then sought to escape through the other entry to the mobile home while Carey momentarily was distracted. He had removed her shoes and jeans, and she was unclad from the waist down. Carey overtook her, grabbed her by the hair, put his hand over her mouth to stifle her screams, and forcibly drug her back into the mobile home. In the process she struck her head on the trailer right by the door and a laceration was inflicted.

The victim testified that Carey started choking her and pushing her down on the floor, and he then had sexual intercourse with her. Following that the co-defendant, Seeley, had sexual intercourse with her, and Carey then had sexual intercourse a second time. Carey and Seeley then took the victim to her sister's home where she lived.

The victim had been in the company of Carey, Seeley, and a female co-worker of the victim from late in the evening the previous night. They had been drinking and dancing at bars and clubs in the Casper area. Afterwards they parted company, but the co-worker could not get her vehicle started after stopping for gas. Carey and

Seeley were still in the vicinity, and they pushed the co-worker's vehicle to her residence with Seeley's pickup. The co-worker had a dispute with her boyfriend at her residence, and the four of them drove around briefly and returned to the co-worker's residence. After attempting to calm the co-worker down the victim decided to see if Seeley and Carey would drive her home. It was then that they took her to Seeley's mobile home.

We shall discuss the errors assigned by Carey in the following categories:

The admission of evidence of prior bad acts;

The exclusion of evidence of sexual conduct on the part of the victim;

The failure to give lesser-included offense instructions;

The sufficiency of the evidence; and

The claim of abuse of discretion in sentencing.

In response to a motion in limine and a motion to limit cross-examination, both submitted by Carey, the trial court ruled prior to the trial that the prosecution could not introduce any evidence of prior bad acts pursuant to Rule 404(b), W.R.E., in its case in chief. At that time the court indicated that such evidence might be admissible on cross-examination or rebuttal if Carey were to testify. The evidence in question related to a prior accusation of rape in Arizona pursuant to which Carey had been tried twice. The jury in each instance was unable to reach a verdict, and the trial judge in Arizona then granted a motion for judgment of acquittal. Other evidence related to an assault on a female in Gillette in 1982 similar to a mugging attack. The charges in Gillette ultimately were dismissed. Carey did testify in his own behalf, and the trial court then permitted the prosecution to inquire into these other matters on cross-examination and to present witnesses to rebut the denials by Carey of the bad acts.

■ Carey contends that the admission of the bad act occurring in Arizona which resulted in a judgment of acquittal violates the constitutional protection against double jeopardy and infringes upon his constitutional right to due process. For this point he relies upon *State v. Perkins,* Fla., 349 So.2d 161 (1977). The court in that case espoused a collateral estoppel theory and held that the admission of an acquittal is improper because the acquittal resolved in defendant's favor the issue of fact which then was presented as a prior bad act. A judgment of acquittal entered after two juries are unable to reach a decision is distinguishable from the holding in *State v. Perkins,* supra. In Carey's instance the judgment of acquittal demonstrates only that Arizona was unable to prove every element of the charged offense to the satisfaction of each and every juror beyond a reasonable doubt. This is quite different from a verdict of a jury of not guilty, and Carey has failed to show how his judgment of acquittal really settled in his favor any facts in issue in his case.

In this instance the factual issue was whether the victim consented. Carey testified that the victim voluntarily consented to sexual intercourse. The victim testified that she did not. The evidence with respect to the prior situations in Arizona and Gillette is relevant with respect to Carey's motive, knowledge and intent as those factors relate to the question of consent and also as to Carey's credibility.

■ Considerable deference is given to the ruling of the trial court with respect to admissibility of evidence. *Bishop v. State,* Wyo., 687 P.2d 242, 244 (1984), cert. denied — U.S. —, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985); *Vasquez v. State,* Wyo., 623 P.2d 1205, 1208 (1981); *Hatheway v. State,* Wyo., 623 P.2d 741, 743 (1981); *Key v. State,* Wyo., 616 P.2d 774 (1980). To overturn a ruling admitting evidence the burden is upon an appellant in a criminal case to demonstrate an abuse of discretion. *Bishop v. State,* supra, 687 P.2d at 244; *Ortega v. State,* Wyo., 669 P.2d 935 (1983); *Grabill v. State,* Wyo., 621 P.2d 802, 811 (1980). Unless there is no legitimate basis for the ruling admitting evidence we will

uphold the district court. *Bishop v. State*, supra, 687 P.2d at 244; *Ortega v. State*, supra, 669 P.2d at 935; *Vasquez v. State*, supra, 623 P.2d at 1208; *Hatheway v. State*, supra, 623 P.2d at 743.

The general rule, which is followed in Wyoming, is that prior bad acts normally are not admissible in evidence in a criminal trial. *Bishop v. State*, supra, 687 P.2d at 245. On the other hand, we have "adopted a rather liberal attitude toward admitting evidence of other crimes, wrongs or acts" if they constitute proof of "motive, opportunity, intent, preparation, knowledge, identity or lack of mistake or accident" in accordance with Rule 404(b), W.R.E. *Bishop v. State*, supra, and authorities there cited. If the issue is identity or modus operandi, the test of substantial relevance for the evidence is higher, because the other acts must also be tied to the defendant. *Grabill v. State*, supra; *Elliott v. State*, Wyo. 600 P.2d 1044 (1979). On the other hand we have recognized that in cases involving sexual misconduct prior conduct consisting of bad acts is of increased pertinency. *Grabill v. State*, supra; *Elliott v. State*, supra; *Vasquez v. State*, supra. Furthermore, we have recognized that evidence of prior bad acts which should not be admitted in the prosecution's case in chief may be admissible on cross-examination or as rebuttal evidence. *Grabill v. State*, supra.

The prior bad acts were not admitted in the case in chief against Carey. It was only after he testified that the victim consented to sexual intercourse that the prior bad acts were introduced. In an instance such as this, when the accused denies the use of force and claims consent, evidence which contradicts his denials of previous use of force in sexual encounters is of assistance to the trier of fact in evaluating his testimony with respect to motive, knowledge and intent in resolving the issue of fact and in evaluating his credibility.

These several rules come together in this case to the end that when there is no issue with respect to the fact that sexual intercourse occurred, the identity of the perpetrator is not disputed, and the only material dispute is whether the sexual intercourse occurred as a product of the victim's consent or was forced (and where the other evidence of force such as bruising, etc., is less than overwhelming) the trial court has a legitimate basis for the admission of evidence of prior bad acts like those presented in this case. The series of inferences which were approved in *Grabill v. State*, supra, from prior bad acts to motive is that in this instance Carey used force in the past and thus there was "something within him" which led him "to act in a particular way." *Elliott v. State*, supra. As we explained in *Elliott v. State*, supra, motive in criminal law means "that which * * * tempts the mind to indulge in a criminal act," quoting *Thompson v. United States*, 144 F. 14 (1st Cir.1906). Carey's motive, knowledge and intent, that is what he had in mind, acquired an additional significance after he denied the use of force similar to the situation in *Elliott v. State*, supra. Subsequently we reiterated the Elliott "conclusion that in recent years a preponderance of the courts have sustained the admissibility of the testimony of third persons as to similar crimes, wrongs or acts in cases involving sexual offenses" to demonstrate motive or plan. *Evans v. State*, Wyo., 655 P.2d 1214, 1219 (1982). Under these authorities the trial court in this instance did not abuse its discretion in admitting the evidence with respect to prior bad acts pursuant to Rule 404(b), W.R.E. Such evidence is not subject to the same limitations as those found in Rule 609, W.R.E.

Carey argues in a rather perfunctory way that the trial court committed reversible error by not allowing him to present evidence that a week after the sexual assault the victim was in a bar picking up men. There was a satisfactory offer of proof of testimony which would have demonstrated these facts, but there was no explanation that would demonstrate the relevance of such evidence. Even in his brief, Carey's only statement to justify relevancy is, "A rape victim is not likely to go

to a bar one week after being raped and attempt to pick up men." Without some indication in the record which would make this evidence otherwise relevant or would substantiate the claim that "[s]exual assault victims display certain behavior patterns: one of which is to avoid men and seek isolation," the trial court did not commit error in excluding this offered proof.

Carey also urges reversible error with respect to the refusal to give lesser-included offense instructions for second degree sexual assault, third degree sexual assault, attempted sexual assault, assault, and assault and battery. In the companion case of *Seeley v. State*, Wyo., 715 P.2d 232 (1986), we explained in detail why none of these are lesser-included offenses with respect to the crime of first degree sexual assault. An offense cannot be a lesser-included offense if it contains elements which are not found in the greater offense. *Seeley v. State*, supra; *Amin v. State*, Wyo., 695 P.2d 1021, 1027–1028 (1985); *Amin v. State*, Wyo., 694 P.2d 119, 121–123 (1985); *Balsley v. State*, Wyo., 668 P.2d 1324 (1983); *State v. Selig*, Wyo., 635 P.2d 786 (1981). Furthermore, even though a valid lesser-included offense may be present, an instruction is not required if the evidence permits only two alternatives: guilty or not guilty of the charged offense. *Amin v. State*, supra, 695 P.2d at 1027–1028; *Amin v. State*, supra, 694 P.2d at 121–123. In this instance if force was used as the victim testified then Carey was guilty. If the sexual intercourse was consensual then Carey is not guilty of first degree sexual assault or any other sexual offense. There would be no basis under a correct analysis of this situation for the jury to find the lesser-included offense except as a product of compromise. There was no error with respect to the refusal of the lesser-included offense instructions.

Carey's contention that the evidence is insufficient to sustain the guilty verdict also fails. We evaluate the evidence in the light most favorable to the State. *Broom v. State*, Wyo., 695 P.2d 640 (1985); *Patterson v. State*, Wyo., 691 P.2d 253 (1984),

cert. denied — U.S. ——, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985); *Fife v. State*, Wyo., 676 P.2d 565 (1984); *Murray v. State*, Wyo., 671 P.2d 320 (1983); *Irwin v. State*, Wyo., 658 P.2d 64 (1983).

Concisely, the record shows that Carey did not deny that he had sexual intercourse with the victim on the night in question. The evidence of the state on the only disputed issue as to whether he accomplished this by force supports the determination of the jury that he did use force. The victim testified that she was chased, grabbed, slammed into the side of the trailer, choked, and held down. Corroborative medical testimony disclosed bruising and abrasions on her body. Under the circumstances the court correctly denied the motion for judgment of acquittal; the evidence is sufficient to sustain the verdict.

After he had been convicted, Carey was sentenced to a term of twenty to twenty-five years in the state penitentiary with credit given for 293 days of pretrial confinement with respect to both the minimum and maximum sentence. He contends that this sentence is excessive. We perceive that he also claims that he was given this sentence in comparison to the sentence of his co-defendant to ten to twelve years simply because he is black. We will not depart from the well-established rule that on appeal we do not set aside a sentence within the legislatively mandated minimum and maximum terms in the absence of a demonstration of clear abuse of discretion. *Volz v. State*, Wyo., 707 P.2d 179 (1985); *Kallas v. State*, Wyo., 704 P.2d 693 (1985); *Wright v. State*, Wyo., 703 P.2d 1102 (1985); *Munden v. State*, Wyo., 698 P.2d 621 (1985); *Young v. State*, Wyo., 695 P.2d 1055 (1985); *Jahnke v. State*, Wyo., 692 P.2d 911 (1984); *Jahnke v. State*, Wyo., 682 P.2d 991 (1984); *Ventling v. State*, Wyo., 676 P.2d 573 (1984); *Wright v. State*, Wyo., 670 P.2d 1090 (1983); *Eaton v. State*, Wyo., 660 P.2d 803 (1983); *Taylor v. State*, Wyo., 658 P.2d 1297 (1983), and authorities cited therein. We must, however, consider the accusation of discrimination because of race.

As it has the prerogative to do, the legislature established a sentence for first degree sexual assault of not less than five nor more than fifty years. Section 6-4-306(a)(i), W.S.1977. Carey and his co-defendant were both found guilty of one count of sexual assault in the first degree, but according to the record Seeley only assaulted the victim once while Carey assaulted her twice. The record also demonstrates that it was Carey who actually applied the significant force in bringing about the sexual assault, so the culpability of the two defendants is different. The trial court also determined that Carey had led an assaultive lifestyle, which was supported by the fact that he had been fined for assault and battery and for breach of the peace. He also had been confined in a boys' school for stealing cars. Other factors, including two prior marriages and an arrest for driving while under the influence, support the conclusion that he has "a poor ability to pick up common social cues." The record manifests that Carey refused to cooperate in connection with the presentence investigation, even refusing to give such particulars as his place of birth. He said, "nobody is going to pry into my background." The sentencing court also noted his pattern of repression and denial. These factors rationally support the imposition of a twenty-to-twenty-five-year sentence, less than half the maximum term of fifty years, for a first conviction of a violent felony, even though the co-defendant received a lesser sentence.

Other factors support the same conclusion. Seeley's prior encounters with the law involved only traffic tickets. He was friendly and cooperative during the presentence investigation. His family and friends supplied substantial information to the court, recommending him for consideration for leniency. He was found to be a suitable candidate for an appeal bond. All of this serves to distinguish the two defendants and demonstrates that the trial court did not impose a longer sentence on Carey simply because of his race. Furthermore, the record does not disclose any abuse of the discretion of the trial judge in imposing the twenty-to-twenty-five-year sentence.

There is no error manifested by the proceedings in the district court in this instance. The judgment and sentence is affirmed.

ROSE, Justice, dissenting.

I dissent, because I believe that the trial court committed reversible error in admitting the evidence of appellant Carey's prior offenses.

It has long been my position that courts should view with hostility evidence of prior bad acts in criminal cases. *Ortega v. State*, Wyo., 669 P.2d 935, 945 (1983), ROSE, J., dissenting; *Grabill v. State*, Wyo., 621 P.2d 802, 814 (1980), ROSE, J., dissenting; *Goodman v. State*, Wyo., 601 P.2d 178, 188 (1979), ROSE, J., dissenting. The danger in admitting such evidence is that it forces the defendant to meet and explain conduct other than that with which he is charged. Such testimony tends to persuade the jury that they are permitted to convict the defendant for offenses other than those for which he stands trial. *Kwallek v. State*, Wyo., 596 P.2d 1372 (1979).

As recently as February 13, 1986, this court said in *Schmunk v. State*, Wyo., 714 P.2d 724, 730 (1986), quoting from *Gabrielson v. State*, Wyo., 510 P.2d 534, 536 (1973):

"'[I]t is settled law in this jurisdiction that mere charges, accusation, and arrests are consistent with innocence; and they should not be inquired into if the purpose of the prosecution is to discredit the witness in the eyes of the jury and convey to the jury knowledge that such witness was charged with a crime.'"

In the instant case, the majority approve the admission of evidence of a prior rape incident in Arizona, for which the defendant was tried twice, as probative on the issue of the present victim's consent. The State, in the Arizona trials, was not able to establish the victim's lack of consent, and a judgment of acquittal was entered in both cases. In my opinion, appellant was de-

prived of his right to a fair trial by having to again mount a defense to a crime for which he was twice acquitted.

A number of courts in other jurisdictions have held that a defendant must be afforded a new trial if his conviction derived from the presentation of evidence of acquitted crimes. The Fifth Circuit Court of Appeals emphasized the unfairness of such evidence in *Wingate v. Wainwright*, 464 F.2d 209, 215 (5th Cir.1972):

> "It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime. Wingate was charged with robbing Hellman and Angel and as a result of those charges he endured the perils of trial. He was acquitted of those very charges and that should end the matter."

The Florida Supreme Court adopted the reasoning of the Wingate court in *State v. Perkins*, Fla., 349 So.2d 161, 163–164 (1977), a case involving the attempted rape of a minor:

> "We agree with *Wingate* that it is fundamentally unfair to a defendant to admit evidence of acquitted crimes. To the extent that evidence of the acquitted crime tends to prove that it was indeed committed, the defendant is forced to reestablish a defense against it. Practically, he must do so because of the prejudicial effect the evidence of the acquitted crime will have in the minds of the jury in deciding whether he committed the crime being tried. It is inconsistent with the notions of fair trial for the state to force a defendant to resurrect a prior defense against a crime for which he is not on trial. Therefore, we hold that evidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial."

See also *Stuart v. State*, Tex.Crim.App., 561 S.W.2d 181 (1978), in which the Texas Court of Appeals reached the same holding where the defendant was charged with aggravated rape.

The majority distinguish these cases from Carey's situation on the ground that his acquittal means only that "Arizona was unable to prove every element of the charged offense to the satisfaction of each and every juror beyond a reasonable doubt." 714 P.2d at 247. Carey's acquittal, according to the majority, is quite different from a jury verdict of "not guilty." Id.

I consider this distinction much too fine, and inconsistent with the fundamental premise of innocent until proven guilty. I agree with that said by the Minnesota Supreme Court in *State v. Wakefield*, Minn., 278 N.W.2d 307, 308–309 (1979), another case in which the validity of the rape charge turned on the question of the victim's consent:

> "* * * We can find no justification for requiring a defendant to bear these burdens [of prejudice and the necessity to defend against extrinsic offenses] when, as here, he has been tried and acquitted of the other charge. *It is true, of course, that an acquittal does not signify 'innocent'; it means instead 'not found guilty beyond a reasonable doubt.'* It may even be at times that evidence of another crime of which the defendant has been acquitted may still meet the Billstrom [*State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967)] standard of being clear and convincing. Even so, *it is a basic tenet of our jurisprudence that once the state has mustered its evidence against a defendant and failed, the matter is done. In the eyes of the law the acquitted defendant is to be treated as innocent and in the interests of fairness and finality made no more to answer for his alleged crime.* It is our view that the admission into a trial of evidence of crimes of which the defendant has been acquitted prejudices and burdens the defendant in contravention of this basic principle and is

fundamentally unfair. Therefore, we conclude that under no circumstances is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense."

The State of Arizona failed to convince a jury of Carey's guilt in the first trial. In the interest of fairness and finality, the State of Wyoming should not have been given the chance to do what Arizona failed to do, in order to obtain the instant conviction.

The majority do not analyze separately the admission of the evidence of the mugging attack in Gillette. I can conceive of no purpose for the allowance of this evidence other than to establish that appellant generally was a bad person and to raise the inference that he committed the charged offense. The Wyoming Rules of Evidence expressly prohibit the admission of evidence of a defendant's prior wrongdoings for such purpose. Rule 404(b), W.R.E., provides:

*"Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. * * * "

This rule—a corollary of the presumption of innocence—requires that a defendant be tried for what he did, not who he is. *United States v. Myers,* 550 F.2d 1036, 1044, 42 A.L.R.Fed. 855 (5th Cir.1977), cert. denied 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

I would have reversed appellant's conviction and required the State to prove its case without relying on improper evidence of character.