STATE OF HAWAII, Plaintiff-Appellee *v.* RICHARD D. ALTERGOTT, Defendant-Appellant

NO. 5755

JANUARY 31, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This is an appeal from a conviction of kidnapping and sodomy in the first degree. The complaining witness testified that the appellant came to the door of her home on the morning of March 22, 1974; that she was alone in the house except for her sleeping three-year old son; that she had never seen the appellant before but allowed him to enter upon his representation that his car had broken down and his request to use the phone; and that after the appellant had used the phone he forced her at knife point to engage in sexual acts. The appellant testified that he had become acquainted with the complaining witness previous to that morning by way of his employment at the Hickam Air Force Clinic, which she had visited for medical treatments; and that she invited him into her home and willingly engaged in the sexual acts but became enraged at him for ejaculating into her mouth and initiated the complaint because of her anger. The credibility

of these accounts was the critical issue in the case, and it is apparent that the jury believed the complaining witness and disbelieved the appellant. The appellant claims prejudicial error in the refusal of the trial court to permit defense counsel to ask certain questions of prospective jurors on voir dire; the admission of certain calendars on which the complaining witness and her husband had recorded their engagements; the failure of the trial court to restrict repetitious cross-examination into an admittedly false statement made by the appellant to the police concerning his relations with the complaining witness: and the refusal of the trial court to grant a continuance to enable the appellant to recall a witness after rebuttal evidence had been introduced by the prosecution. We affirm for the reasons given in our discussion of these points.

## I. RESTRICTED VOIR DIRE OF PROSPECTIVE JURORS

The questions which defense counsel was not permitted to ask in voir dire are set forth in the margin.[1] As characterized in appellant's brief, defense counsel's questions were for the purpose of ascertaining from the prospective jurors their attitudes and presumptions concerning the veracity of women who bring criminal sexual charges; their reactions to sexual acts which are legal when practiced by two consenting adults: and their ability objectively to hear and evaluate appellant's testimony if the evidence disclosed that he was engaging in an extramarital affair. Since we conclude that it was within the discretion of the trial court to deny permission to make these inquiries on voir dire, it is not necessary for us to consider whether the questions proposed by defense counsel were proper in form and, if they were not,

---

[1] Counsel was refused permission to ask the following questions:

"Would all jurors accept the proposition that for a variety of reasons some women are capable of falsely accusing a male of rape or forcible sexual act?"

"Would each member of the jury accept the proposition that some people are psychologically capable of being intimate sexual relationship partners with whom they have had no small amount of prior social contact?"

what duty rested on the trial court to submit suitable questions to the prospective jurors for these purposes.

The examination of prospective jurors in a criminal case is governed by Rule 24(a), Hawaii Rules of Penal Procedure (same in Hawaii Rules of Criminal Procedure, at the time of trial), which reads:

> (a) *Examination of Jurors*. The court shall permit the parties or their attorneys to conduct the examination of prospective jurors or shall itself conduct the examination. In the latter event the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper.

The right of trial by an impartial jury is guaranteed to a criminal defendant by the state constitution (Art. I, Sec. 11) and by the Sixth Amendment of the federal constitution as applicable to the States through the Fourteenth Amendment, as well as by principles of due process under both the state and federal constitutions. *State v. Pokini*, 55 Haw. 640, 526 P.2d 94 (1974). Refusal of the trial court to make or permit sufficient inquiry into possible prejudices of prospective jurors may infringe these constitutional rights. The circumstances of a particular case may create a necessity for questioning prospective jurors specifically about racial prejudice during voir dire. *Ham v. South Carolina*, 409 U.S. 524 (1973). Defendants have been held to have the right to inquire into possible prejudices concerning their alleged ties with the Communist Party. *Morford v. United States*, 339 U.S. 258 (1950). It has been said that the right extends to

---

"Fellatio. Is there anybody (sic) does not understand that term? All right. I'll use the term fellatio probably throughout the trial. Fellatio is the sexual act in which a woman takes a man's penis into her mouth. All right, now as far as our legislature says, fellatio is lawful if it occurs between two consenting adults. Is there anyone on this jury panel that has a quarrel with the state of the law?"

"Is there any member of this jury that would disbelieve the testimony of my client Richard Altergott if for the simple reason they found out during the course of this trial that when he was married to a woman he voluntarily went to have an affair with another women? Is there anybody who would as a result of that disbelieve his testimony?"

examination into "religious and other prejudices of a serious character". *Aldridge v. United States,* 283 U.S. 308 (1931).

In *State v. Pokini, supra,* we reversed a conviction for the reason, among others, that the voir dire examination of prospective jurors had been unduly restricted. In the opinion of two members of this court, the pretrial publicity had been so extensive and so likely prejudicial as to constitutionally require an examination of the prospective jurors to determine the impartiality of these jurors who had been exposed to it. A third member of the court was not convinced that the nature and extent of pretrial publicity made the voir dire examination of the prospective jurors inadequate for the purpose of ascertaining whether or not a prospective juror was qualified to serve, but concluded that the prohibited inquiry into pretrial publicity should have been permitted to enable the defendants to exercise their peremptory challenges successfully. The remaining two members of this court were of the opinion that the voir dire procedure followed by the trial court was within its discretion in the absence of any demand for an individual voir dire prior to the exercise of the defendants' peremptory challenges.

It is clear that a defendant is not constitutionally entitled to examine into every possible prejudice which might be harbored by a prospective juror. In *Ham v. South Carolina, supra,* the Court refused to extend the right to include inquiry into possible prejudice against the defendant because he wore a beard. Even examination into possible racial prejudice is not constitutionally required in all cases.

The Constitution does not always entitle a defendant to have questions posed during *voir dire* specifically directed to matters that conceivably might prejudice veniremen against him. *Ham, supra,* at 527-528. *Voir dire* "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Connors v. United States,* 158 U.S. 408, 413 (1895); see *Ham, supra,* at 527-528; *Aldridge v. United States,* 283 U.S. 308, 310 (1931). This is so because the "determination of impartiality, in which demeanor plays such

an important part, is particularly within the province of the trial judge." *Rideau v. Louisiana,* 373 U.S. 723, 733 (1963) (Clark, J., dissenting). Thus, the State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant. (*Ristaino v. Ross,* 424 U.S. 589, 594 (1976)).

In *Ristaino,* the Court rejected a per se rule that would have required voir dire on racial prejudice in any case involving a crime of violence where the defendant was of a different race than the victim, noting that the logic of such a rule would encompass other factors, such as religious affiliation or national origin. As defined in *Ristaino,* the federal constitutional right to examine into specific possible prejudices on voir dire is confined to cases where "under all of the circumstances presented there was a constitutionally significant likelihood" that, absent questioning about the specific prejudice in question, the jurors would not be free from disqualifying prejudice. (424 U.S. 589, 596). We have discovered no reason to be dissatisfied with the rationale of the constitutional rule announced in *Ristaino* and adopt it as a definition of the right, under the state constitution, of an accused to inquire into specific prejudices on voir dire. The record before us contains nothing to show a significant likelihood that any of the prospective jurors, if not questioned as defense counsel proposed, would be prejudiced against the appellant. We conclude that the generalized inquiry by the trial judge into the impartiality of the prospective jurors satisfied the requirements of both the federal and the state constitutions.

However, the appellant argues for a rule which would provide more opportunity for the accused to uncover the existence of beliefs and opinions on the part of prospective jurors which would be relevant to the exercise of his peremptory challenges. Although *Ristaino* denies federal constitutional support for this argument, it was indicated that the Court would, under its supervisory power, have required a federal court to propound appropriate questions designed to

identify racial prejudice if requested by the defendant under the circumstances present in that case. (424 U.S. 589 at 597, n. 9). It is open to us to consider a similar exercise of our supervisory power.

Peremptory challenges are created by rule of court and there is no constitutional requirement that the right to challenge peremptorily be extended to an accused. *Stilson v. United States,* 250 U.S. 583 (1919). Although some form of peremptory challenge seems to be given to the accused in all American jurisdictions, in a number of them questions on voir dire may not be asked solely to determine the advisability of peremptory challenges. ORFIELD, TRIAL JURORS IN FEDERAL CRIMINAL CASES, 29 F.R.D. 43, 115 (1962). On the other hand, it has been said that the fairness of trial by jury requires that the voir dire be used to expose race, religion, nationality, occupation or affiliations of prospective jurors for the purpose of exercising peremptory challenges. *Swain v. Alabama,* 380 U.S. 202 (1965). The American Bar Association Standards for Criminal Justice require that a voir dire examination be conducted both for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable an intelligent exercise of peremptory challenges. ABA STANDARDS, Trial by Jury, Sec. 2.4 (1968). Our decisions support the use of voir dire to guide peremptory challenges. *Choy v. Otaguro,* 32 Haw. 543, 546 (1932); *Carr v. Kinney,* 41 Haw. 166, 169-170 (1955); *State v. Pokini, supra* at 662 (Menor, J., concurring). Although Rule 24(a), H.R.P.P., gives the trial judge discretion in fixing the permissible scope of voir dire examination, that discretion is not unlimited and must be exercised so as not unduly to restrict the conduct of voir dire for this purpose.

The scope which an accused should be afforded in conducting such an examination is limited by considerations related to the purpose properly served by peremptory challenges and by considerations of judicial efficiency. Peremptory challenges are but one of several procedural measures which have been adopted to promote the selection of impartial juries and to weed out jurors affected by bias. The right to

an impartially selected jury assured by the Fourteenth Amendment "does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried". *Hoyt v. Florida*, 368 U.S. 57, 59 (1961). Although the nonconstitutional right to challenge peremptorily may be exercised for any reason or purpose, including that of limiting the selection of jurors to those who are thought to be predisposed toward the defendant, *Swain v. Alabama, supra*, we are free to subject the voir dire examination of prospective jurors, which implements the right, to restrictions which are not imposed upon the exercise of the right itself.

Rule 24(a) leaves to the court's discretion the regulation of voir dire examination so as to keep the questioning by counsel within reasonable bounds and to confine it to assisting in the impaneling of an impartial jury. In an effort to provide direction to trial courts in the exercise of this discretion, the New Jersey Supreme Court designated as improper the use of voir dire by defense counsel "to educate the jury panel on the facts of the particular case, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, to induce the jurors by use of . . . . hypothetical questions or otherwise to commit themselves to vote in a particular way, or to instruct them in matters of law". *State v. Manley*, 54 N.J. 259, 276, 255 A.2d 193, 202 (1969). At the same time, the fact that putting a proper question on voir dire may incidentally constitute anticipatory argument having a tendency to precondition the jury does not justify exclusion of the question. *United States v. Blount*, 479 F.2d 650, 651-652 (6th Cir. 1973).

Since the regulation of the voir dire has been intrusted to the discretion of the trial judge, we are not permitted to substitute our judgment for his. We agree with the standard of review stated by the Third Circuit Court of Appeals in dealing with the comparable provision of Rule 24(a) of the Federal Rules of Criminal Procedure: "[A]bsent abuse of his broad discretion, and a showing that the rights of the accused

have been substantially prejudiced thereby, the trial judge's rulings as to the scope and content of *voir dire* will not be disturbed on appeal''. *United States v. Robinson*, 475 F.2d 376, 380 (D.C.Cir. 1973). We must consider in what context the trial judge exercised his discretion in this case.

The appellant, a married man, was charged with having forced the wife of another man to engage in an oral sex act. The questions he sought to address to the prospective jurors would have disclosed biases against persons who engage in such sexual conduct or in extramarital sexual relations and biases in favor of women who bring criminal sexual charges. The existence of such biases, even if not providing a ground of challenge for cause, would certainly have been significant to the appellant in exercising his peremptory challenges. However, a host of other biases would have been similarly significant if discerned by defense counsel. Possible biases might have existed against members of the armed forces, mainlanders, persons with appellant's physical characteristics, and the like. Virtually any question addressed to the jurors would have had the potential of disclosing some mental attitude on the part of a juror which might affect his consideration of the evidence and might be relevant to the exercise of peremptory challenges. In ruling as to a particular question, the trial judge must be guided in very large part by his appraisal of the usefulness of the question in achieving the selection of an impartial jury, which in turn will depend upon his judgment of the likelihood that the question will disclose a mental attitude which would be significant in exercising challenges, whether for cause or peremptory. The question for us is whether such a likelihood existed here and whether its existence should have been so apparent to the trial judge that his refusal to permit the question was an abuse of discretion.

In *United States v. Robinson, supra*, the appellate court indicated that it might have disagreed with the exclusion by the trial court, in a murder case, of questions proposed by defense counsel on voir dire which inquired whether any jurors felt that self-defense did not justify the willful taking of human life and whether any of them would be unable to follow

the court's instructions on self-defense. However, the court found no reversible error. The prejudice against a claim of self-defense which the questions sought to expose was not seen as one concerning which the local community or the population at large is commonly known to harbor strong feelings, or one which had come to be recognized as a proper subject for voir dire.

> When the matter sought to be explored on *voir dire* does not relate to one of those recognized classes, it is incumbent upon the proponent to lay a foundation for his question by showing that it is reasonably calculated to discover an actual and likely source of prejudice, rather than pursue a speculative will-o-the-wisp. The appellants made no such effort at the time the question was submitted to the trial judge; nor did they present before this court any material tending to show that prejudice against a claim of self-defense was likely to be encountered in the community from which the veniremen were drawn. Absent such a showing, we find no prejudice to the rights of the accused. (475 F.2d at 381).

A substantially similar standard for questions dealing with prejudices not generally recognized in the community is proposed in Note, *Voir Dire: Establishing Minimum Standards to Facilitate the Exercise of Peremptory Challenges*, 27 Stanford L.R. 1493, 1518 (1975).

Although the *Robinson* court appears to distinguish between actions of the trial court which constitute an abuse of discretion and those which prejudice substantial rights, we do not see the usefulness of the distinction. We adopt the criteria stated in *Robinson* for the purpose of determining whether the trial judge abused his discretion in the present case. No representation was made to the trial judge, or has been made to this court, that opinions in the community with respect to oral sex and extramarital sexual relations are, or are commonly known to be, so intense, divided or militant that failure to ask the proposed questions entailed any significant risk that the jury would not be impartial. We do not consider that the trial judge was required, in the absence of

any showing, to assume that these circumstances existed. It was otherwise in *Pokini*, where pretrial publicity had been extensive. Here it was not even argued to the trial judge that there was any reason to believe that a juror would in fact give answers to these questions which would be significant to the exercise of peremptory challenges, although defense counsel expressed a desire to know the answers for that purpose. The trial judge was not required to agree with defense counsel as to the usefulness of the proposed questions, under these circumstances. Accordingly, we conclude that there was no error in the conduct of the voir dire examination of prospective jurors in this case.

## II. ADMISSION OF CALENDARS

During cross-examination by defense counsel, the complaining witness was asked where she had been the night before the alleged assault by the appellant. She was unable to recall, and mentioned that she had brought with her a calendar which could be checked. At the request of defense counsel, she produced the calendar. It consisted of a large sheet marked in squares for the days of February and March, 1974, within which squares, according to the testimony of the complaining witness and her husband, they had written down their appointments, social engagements and the like. In response to subsequent questions on both direct and cross-examination, the complaining witness and her husband described entries on the calendar. In some instances the testimony was confined to the description of the entry. In other instances, the witness testified that the event described in the entry had occurred. Thus, the calendar entries came before the court both as "past recollection recorded" and for the purpose of refreshing the memory of the witness in order that he or she might testify from present recollection.

Later in the trial, another similar calendar was produced covering the months of October, November and December, 1973. The complaining witness and her husband were ques-

tioned with reference to their activities on certain days, with their attention directed to this calendar. Their answer was from present recollection and a description of the calendar entries was given by them.

Both calendars were admitted in evidence over the objection of defendant. With respect to the calendar for February and March, the objection was "that it's past recollection recorded since the witness, both he and his wife, testified as to the matters which are contained therein." With respect to the calendar for October, November and December, defendant renewed these grounds of objection by referring to his objection to the admission of the first calendar. The appellant now contends that the calendars were used only to refresh the recollection of the witnesses and were inadmissible as evidence.

The appellant distinguishes those documents which qualify as "past recollection recorded", which the appellant concedes are admissible when the witness cannot directly state the facts from present memory and the authenticity and reliability of the document is satisfactorily established. 3 WIGMORE, EVIDENCE § 754 (Chadbourn rev. 1970). A writing which is used to refresh the recollection of a witness, it is said by Wigmore, differs from a record of past recollection in being in no strict sense evidence, so that the offering party has no right to have the jury see it although the opponent may show it to the jury and the jury may demand it. *Ibid*, § 763. With respect to these rules, Wigmore has this to say:

> Courts should cease to treat them as anything but provisional and crude aids to truth. The trial court's discretion should be allowed to control. There should be liberal interpretation and liberal exemption. And a ruling of admission should seldom, if ever, be deemed as error worth noting on appeal. *Ibid*, § 755.

While the appellant has argued that, even if some of the calendar entries were admissible, the admission of the calendars in their totality was error, this objection was not raised in the trial court and will not be considered on appeal. *Low v. Honolulu Rapid Transit Co.*, 50 Haw. 582, 445 P.2d 372

(1968). The appellant objected to the admission of the calendars solely upon the ground that they were "past recollection recorded" and inadmissible because the witnesses had testified as to the matters contained in them. At least as to the calendar for February and March, this objection was factually unsound, since a portion of the complaining witness' testimony consisted merely of describing the calendar entry, without testifying with respect to it from her present recollection. If any part of the calendar was admissible, which this entry would appear to have been even under the appellant's present contentions, it was incumbent on the appellant to identify those portions which should be excluded and the blanket objection to the calendar's admission was properly overruled by the trial court. The calendar for October, November and December, however, was used only to refresh the recollection of the complaining witness and her husband.

There are circumstances in which the prior consistent statement of a witness may be offered to bolster the credibility of the witness. 4 WIGMORE, EVIDENCE § 1122 (Chadbourn rev. 1970). Since the witness in such cases is also the declarant and is subject to cross-examination, the prior consistent statement is not hearsay and is not properly excluded on that ground. A prior consistent statement of a witness who has merely testified in direct examination, without impeachment, is ordinarily excluded because it is unnecessary and valueless. *Ibid,* § 1124. However, a witness who has been impeached may be rehabilitated by showing prior consistent statements. McCormick suggests that even if impeachment of a witness amounts only to an imputation of inaccurate memory, the "consistent statement made when the event was recent and the memory fresh should be received in support." McCORMICK, EVIDENCE § 49 (2d ed. 1972), quoted with approval in *Applebaum v. American Export Isbrandtsen Lines,* 472 F.2d 56, 61 (2d Cir. 1972). Both the Federal Rules of Evidence and the Uniform Rules of Evidence, in Rule 801(d) (1), exclude from the bar of the hearsay rule a prior consistent statement of a witness which "is offered to rebut an express or implied charge against him

of recent fabrication or improper influence or motive."

There is division of opinion throughout this field of law, but we are satisfied that both reason and the modern trend of authority support the admission in evidence of the calendars about which the complaining witness and her husband were examined and cross-examined in this case. Defense counsel made extensive use of the calendars in cross-examination, in an obvious effort to discover a discrepancy between the calendar entries and the testimony given in trial. It was apparent that the purpose of the cross-examination with respect to the calendars was to implant in the minds of the jurors a doubt that the witnesses were correctly relating past events. The fact that the attempt was not particularly successful did not foreclose the prosecution from taking the logical step of supporting the witnesses against these attacks by placing the calendars before the jury. "Where the judge construes a line of questioning to be directed toward impugning the memory of a witness, then he will allow a consistent statement made when the event was recent and memory fresh to be received in support". *United States v. Kellar,* 145 F. Supp. 692, 697, (D.N.J. 1956). Having been properly admitted to support the witnesses, the calendars were properly treated as substantive evidence. McCORMICK, op. cit. § 251.

### III. SCOPE OF CROSS-EXAMINATION

A police detective testified to the circumstances and contents of an oral statement made by the appellant to the detective after his arrest. In this statement the appellant claimed that he had engaged in sexual intercourse with the complaining witness on two occasions prior to the visit of March 22nd, giving the dates as March 14 and March 19, and that he had gone to the home of the complaining witness on March 22 to break off the affair. On direct examination, the appellant admitted making the statement and that the claim of prior sexual intercourse with the complaining witness was not true, but testified that parts of the statement were true. On cross-

examination, the appellant testified that he had not visited the complaining witness between March 7 and March 22. He was then asked numerous questions dealing with the details of his statement as to his relations with the complaining witness on March 19, which questions were designed to, and did, elicit repeated admissions from the appellant that these parts of the statement were lies. The appellant contends that it was error to allow the prosecution to continue its persistent questioning of the appellant about the veracity of his prior statement, after its falsehood had been admitted.

The scope of legitimate cross-examination is recognized as broad:

> ... [T]he trial judge has a recognized discretionary power to control the extent of examination. This exercise of discretion will only be reviewed for abuse resulting in substantial harm to the complaining party. An examination of a large number of these cases leaves the impression that in practice abuse is more often found when complaint is made that the judge has unduly curbed the examination than when undue extension of the discretion to permit the questioning is charged. (MCCORMICK, op. cit. § 29).

The accumulated case law invests the trial court with discretion to determine whether repetitive questioning is or is not appropriate cross-examination. 81 Am. Jur. 2d § 511 (1976). Permitting repetitive questions aimed at discrediting a witness, which are not inappropriate in either mode or subject matter, does not constitute an abuse of discretion. 3 WIGMORE, EVIDENCE § 781-782 (Chadbourn rev. 1970).

> The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted (citations omitted). But no obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked. There is a duty to pro-

tect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him. *Alford v. U.S.*, 282 U.S. 687, 694 (1931).

The prolonged questioning in the instant case focused upon the defendant's veracity and concerned a prior inconsistent statement. There was no misstatement of the salient facts by the prosecution nor any attempt to place words in the mouth of the witness. *Cf., Berger v. U.S.*, 295 U.S. 78, 84 (1935). In *Heard v. United States*, 255 F. 829 (8th Cir. 1919), the defendant was charged with theft of money in the custody of a messenger, who was called as a prosecution witness. On direct examination, the witness testified that he had conspired with the defendant to simulate an armed robbery. On cross-examination, the witness admitted that he had made a false statement as to the circumstances of the robbery after the event. Further questioning as to the details of the false statement was not permitted by the court, on the ground that the falsehood had been admitted. It was held that the defendant was entitled to draw from the witness the entire statement he had first made and that restriction of the cross-examination was prejudicial error.

It was proper, relevant, and material cross-examination to draw forth from this witness the fact that, when the transaction was recent and his recollection was fresh, he had told a different story, one so inconsistent with that to which he had testified that both stories could not be true. That was material cross-examination, because it at once challenged the credibility of his testimony, and, the more in detail his first story was, the more incredible it rendered his evidence. Neither a witness nor a party may lawfully escape such cross-examination by his mere testimony or admission that the witness has made statements inconsistent with his testimony at the trial and that they were false. Cross-examination may not be shut off in this way. The cross-examiner has the right to prove by his adversary's witness, if he can, what inconsistent statements he has made, not only in general, but in every material detail, for, the more specific and substantial the

contradictory statements were, the less credible is the testimony of the witness. (255 F. at 832)

While the present case differs in that the details of the appellant's false statement were before the jury in the testimony of the detective, the rationale of the *Heard* court is applicable. The appellant had attempted to minimize the falsity of his prior statement by asserting in his direct examination that some parts were true. It was not an abuse of the trial court's discretion to allow the appellant to be cross-examined as to the statement to the extent permitted in this case.

### IV. CONTINUANCE

Attempting to impeach the credibility of the complaining witness, the appellant called a witness who testified that he believed he had seen the complaining witness, unaccompanied by her husband and escorted by another man, at a Christmas party in 1973. Subsequently, the prosecution called two witnesses, an armed forces policeman and a Honolulu police detective, who related that they were unable to find the host of the purported party. Late on the last afternoon of the trial, defense counsel sought a recess to enable him to locate and recall his witness for surrebuttal. The appellant contended that denial of the requested continuance was an abuse of the trial court's discretion.

We have said:

> It is not an abuse of discretion for the trial judge to refuse at the close of the hearing the verbal request of the accused for a continuance which is not supported by a showing that the accused can and will produce further evidence material to his defense although some of the developments during the hearing may tend to have surprised the accused. (*In re Goo Wan Hoy*, 24 Haw. 256, 257 (1918).

The materiality of the testimony of the absent witness was limited to impeachment of the credibility of the complaining witness. Abuse of discretion will not ordinarily be found in the

denial of a continuance to enable a temporarily unavailable witness to be called whose testimony will not bear directly upon the issue of guilt and who is called only for purposes of impeachment. *State v. Cotton,* 103 Ariz. 408, 443 P.2d 404 (1968); *State v. Bolden,* 525 S.W. 2d 625 (Mo. App. 1975).

Moreover, the absent witness had already testified, and there was no showing that the testimony on his recall would be other than cumulative. It is within the discretion of the trial court to deny a continuance that would add nothing of substance to previous testimony and would needlessly prolong the trial. *Commonwealth v. Nassar,* 354 Mass. 249, 237 N.E. 2d 39 (1968), *cert. den.* 393 U.S. 1039; *Machin v. State,* 213 So.2d 499 (Fla.Ct.App. 1975)

Denial of the continuance under these circumstances did not constitute an abuse of the discretion of the trial court.

The judgment is affirmed.

*James T. Leavitt, Jr., (Hart, Leavitt and Hall* of counsel) for Defendant-Appellant.

*Charles A. Viviano,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.