**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **ANTHONY M. PALABAY**, Defendant–Appellant

NO. 15591

(CR. NO. 90–1788)

DECEMBER 17, 1992

BURNS, C.J., HEEN AND WATANABE, JJ.

416

OPINION OF THE COURT, BY WATANABE, J.

Defendant–Appellant Anthony M. Palabay (Defendant) appeals his jury conviction of seven counts of varying degrees of

Sexual Assault, contending that the trial court reversibly erred in four respects. First, Defendant argues that the trial court abused its discretion when it allowed the child victim (Complainant), who at the time of trial was 12 years old, to hold a teddy bear while testifying. Second, Defendant maintains that the trial court erred in permitting the prosecutor to refer to Complainant's out–of–court videotaped statements to police, during the cross–examination of Defendant. Third, Defendant contends that the trial court abused its discretion in denying his motion for a mistrial. Finally, Defendant insists that his substantial rights were prejudicially affected, and he was denied a fair trial because of the prosecutor's continuing and deliberate course of misconduct.

We agree that it was error for Complainant to have testified while holding a teddy bear, absent a finding of compelling necessity. It was also error for the State to have cross–examined Defendant about the substance of Complainant's videotaped statements, which were inadmissible hearsay. If the State knowingly permitted Complainant to hold a teddy bear while testifying, moreover, a reasonable argument can be made that such action evidenced bad faith and amounted to misconduct since the State had earlier agreed, in response to Defendant's motion in limine, not to introduce photos of Complainant's bedroom depicting teddy bears. However, based on our review of the record, we conclude that these errors, in view of the overwhelming evidence of Defendant's guilt, had little effect on the outcome of the trial, did not cumulatively prejudice Defendant so as to deny him a fair and impartial trial, and were thus harmless. We accordingly affirm the judgment below.

## FACTS AND PROCEDURAL HISTORY

On September 28, 1990, at about 11:00 p.m., Complainant, who was then eleven years old, returned home with her sister, age nine, half–sister, age six, half–brother, age two, and mother

(Mother) from a football game at Aloha Stadium. After putting the two younger children to bed, Mother went out dancing with her sister, leaving the four children in the care of her husband, Complainant's stepfather (Stepfather). Stepfather had been home all evening, drinking beer and watching television with a neighbor and three co–workers. One of these co–workers was Defendant, who by this time was the only guest remaining.

Shortly after Mother's departure, Stepfather fell asleep on the couch, and Defendant fixed rice and hot dogs for Complainant and himself since Complainant had earlier indicated she was hungry. Defendant then put on a pornographic movie and invited Complainant and her sister to watch it with him. They declined and stayed in their bedroom instead.

Complainant ate in her room, and when she went to return her bowl to the kitchen, she saw Defendant sitting on the couch with his shorts unzipped, playing with his penis. Scared, Complainant returned to her room and told her sister what she had seen; her sister, too, became scared.

Defendant had seen Complainant observe him and return hurriedly to her room. He walked into the girls' bedroom and asked Complainant for her bowl so he could return it to the kitchen. Defendant testified that as he was exiting the kitchen, Complainant entered the kitchen, and "that's when [he] laid [his] hand on her breast." June 27, 1991 Transcript at 128. Complainant then returned to her room. Defendant followed her and apologized for touching her breast. In addition, he told both girls, "I'm not mean like your parents are, and I would like to adopt you as my own daughters." *Id.*

Afterwards, Defendant resumed watching the movie and again asked the girls if they would like to watch, telling them that "it's a part of life and [they're] going to have — [they're] going to have sex soon." *Id.* at 36. He also asked them if they would "like to see [his] penis." *Id.* at 129. They declined, went into their room, closed their door, and decided to pretend that they were asleep.

Subsequently, on three different occasions that evening, Defendant entered the girls' bedroom and touched Complainant's vagina. He put his hand in between her shorts and her underwear, using both his hand and her underwear to rub her; each time he would return to the living room and resume playing with his penis, drinking beer, and watching the movie. The third time Defendant touched Complainant's vagina, he also put his hand on her breast. Complainant testified that on one of those occasions, Defendant inserted his finger into her vagina; however, his finger did not directly touch her vagina since his hand remained on the outside of her underwear. Complainant further testified that on each of the three occasions in issue, Defendant was fully clothed and did not have his penis exposed. After leaving the girls' bedroom for the third time, Defendant turned off the television and left the premises.

Complainant and her sister then attempted, without success, to awaken Stepfather. Mother returned home around 1:30 a.m., found Complainant curled up on her bed crying, and learned what had transpired. The police were summoned, and Defendant was arrested a few hours later.

An indictment filed on October 3, 1990 charged Defendant with seven counts of Sexual Assault for molesting Complainant.

Count 1 charged Defendant with Sexual Assault in the First Degree, a violation of Hawai'i Revised Statutes (HRS) § 707–730(1)(b) (Supp. 1991), and alleged that Defendant "did knowingly subject to sexual penetration, [Complainant], who is less than 14 years old, by inserting his finger into her vagina[.]"

Count 2 charged that Defendant committed Sexual Assault in the Third Degree, a violation of HRS § 707–732(1)(b) (Supp. 1991), in that he "did knowingly subject to sexual contact, [Complainant], . . . by touching her breast with his hand[.]"

Counts 3 and 4 accused Defendant of Sexual Assault in the Third Degree, a violation of HRS § 707–732(1)(b) (Supp. 1991),

and alleged that he "did knowingly subject to sexual contact, [Complainant], . . . by touching her vagina with his hand."

Counts 5, 6, and 7 charged Defendant with Sexual Assault in the Fifth Degree, a violation of HRS § 707–734(1) (Supp. 1990), and alleged that Defendant "did intentionally expose his genitals to [Complainant], . . . under circumstances in which the said [Defendant's] conduct is likely to cause affront or alarm."

At trial, Defendant admitted that he touched Complainant's breast, as charged in Count 2, and that he touched her vagina ("private area"), as charged in Counts 3 and 4. Although Defendant never directly admitted that he intentionally exposed his genitals to Complainant, as charged in Counts 5 through 7, he did admit, on cross–examination, that he chose to masturbate in the living room, knowing that Complainant would pass by him. Defendant's primary contention at trial was that he did not "knowingly subject to sexual penetration, [Complainant], . . . by inserting his finger into her vagina," as alleged in Count 1 of the indictment, and therefore, he could not be convicted of Sexual Assault in the First Degree.

Nevertheless, Defendant was convicted on all counts and sentenced to prison for a term of twenty (20) years for Count 1, five (5) years each for Counts 2, 3, and 4, and thirty (30) days each for Counts 5, 6, and 7, all terms to be served concurrently.

Defendant timely appealed.

## DISCUSSION

### I.

### Propriety of Child Witness
### Holding a Teddy Bear

At the time of trial, Complainant was 12 years old and in the seventh grade. While testifying on direct examination, she was asked by the prosecutor to walk over to an exhibit board. As Complainant approached the board, defense counsel noticed, for the first time, that Complainant was holding a teddy bear.

Defense counsel strenuously objected, arguing that the teddy bear was a "blatant prosecutorial ploy to make the child even more appealing and attractive than she already is," June 27, 1991 Transcript at 22, and that there had been no showing by the State that it was absolutely necessary for the child's comfort that she hold a teddy bear while testifying in court. The trial court, however, overruled the objection and suggested that defense counsel question the Complainant about her need to hold the teddy bear. Defense counsel did not do so, and direct examination of the Complainant continued.

Shortly thereafter, also during direct examination, defense counsel reiterated the objection to Complainant's holding of the teddy bear. This time, however, the court sustained the objection and requested that the prosecutor ask Complainant to leave the teddy bear at the exhibit board and return to the witness stand.[1]

Defendant argues on appeal that the trial court abused its discretion when it failed to sustain his counsel's first objection to the teddy bear, and as a result, he was deprived of his constitutional due process right to a fair trial. Defendant claims that the teddy bear bestowed on Complainant an "unwarranted aura of vulnerability, naivete, ingenuousness, purity, and credibility," and prejudicially caused the jury to infer that Complainant was so afraid of Defendant that she needed this extraordinary measure of comfort to testify.

---

[1] Complainant's testimony at trial is set forth on pages 16–69 of Volume II of the Transcript of Proceedings. Complainant's initial approach to the exhibit board is noted on page 21 of the transcripts. Defense counsel's first objection to Complainant's holding of the teddy bear and the bench proceedings regarding said objection are reflected on pages 21–22 of the transcripts. Defense counsel's second objection and the bench proceedings thereon are set forth on pages 24–25 of the transcript. The transcripts indicate on page 25 that Complainant put down the teddy bear.

It is fundamental to our American system of justice that a person accused of a crime has a right to a fair and impartial trial. "In cases, such as this, where it is necessary to receive testimony from young children, the court must strike a balance between the defendant's right to a fair trial and the witness's need for an environment in which he or she will not be intimidated into silence or to tears." *State v. Cliff*, 116 Idaho 921, 924, 782 P.2d 44, 47 (1989). The Hawai'i Supreme Court has recognized that a trial court has discretion to allow special measures aimed at putting young children at ease on the witness stand, *State v. Suka*, 70 Haw. 472, 477 n.2, 777 P.2d 240, 243 n.2 (1989) (citing with approval *Baxter v. State*, 522 N.E.2d 362 (Ind. 1988)), but has also cautioned that in exercising such discretion, a trial court must determine the compelling necessity for the special measures. *State v. Rulona*, 71 Haw. 127, 130, 785 P.2d 615, 617 (1990). In this regard, the supreme court found no compelling necessity for an eight–year–old child to testify on the lap of a sexual abuse counselor, where the record showed that the child had testified unaided before the grand jury and there was no indication that she could not testify without sitting on the counselor's lap. *Id.*, 71 Haw. at 130, 785 P.2d at 617. Similarly, where a victim–witness counselor sat with or stood behind a fifteen–year–old witness with hands on the witness' shoulders, and the necessity of the counselor's presence was never established, the supreme court concluded that the counselor's presence bolstered the child's credibility and denied the defendant his right to a fair and impartial trial. *State v. Suka*, 70 Haw. at 476, 777 P.2d at 242.

Although the Hawai'i Supreme Court has not had occasion to consider whether a defendant's right to a fair trial is violated when a child witness is allowed to hold an inanimate object such as a teddy bear while testifying, at least two other courts have confronted the issue.

In *State v. Cliff, supra*, the child witness, an eight–year–old victim of lewd and lascivious conduct, entered the courtroom to

take the stand, holding a doll. At the request of the defendant, the jury was excused and the defendant registered his objection to the child appearing in court with a doll. The trial court then allowed the state to produce testimony as a foundation for allowing the child to possess the doll while testifying. The court–appointed guardian ad litem for the child testified that during the preliminary hearing, the child started to have dry heaves while on the stand and had to be taken to a restroom. The guardian further testified that when the child got upset, she tended to wring her hands, put her hands on her face, and chew her nails. It was the guardian's opinion that being able to hold the doll would give the child something to do with her hands. Following the hearing, the court allowed the child to take the stand with the doll. On appeal, the defendant argued that this constituted error because it highlighted the vulnerability of the child and increased the jurors' natural sympathy toward her, thereby prejudicing his right to a fair trial and violating his constitutional right of confrontation. The Idaho Court of Appeals disagreed. The court found no violation of the Confrontation Clause because the defendant was allowed to face the child in court and was given wide latitude in questioning her. Further, the court refused to disturb the trial court's conclusion that the doll could have a calming effect on the child and that the benefit of having coherent testimony from the child outweighed any possible prejudice to the defendant. 116 Idaho at 923–24, 782 P.2d at 46–47.

In *State v. Gevrez*, 61 Ariz. 296, 148 P.2d 829 (1944), the defendant was on trial for murdering his ex–wife. When his fifth–grade daughter was called to the stand by the state, she carried in her arms an old doll which she testified "was [her] mama's doll." While she testified, her grandmother, the deceased's mother, was permitted to sit near the jury and weep. The Supreme Court of Arizona, noting that the record in the case indicated that the doll–holding had been prearranged by the prosecution to arouse the sympathy of the jury, concluded that under such circumstances, the

defendant had been deprived of a fair and impartial trial. 61 Ariz. at 306, 148 P.2d at 833.

In the instant case, there is no evidence on the record to indicate the compelling necessity for Complainant to hold a teddy bear while testifying. Absent the finding of necessity and in view of the foregoing authorities, we conclude that it was error for the trial court to allow Complainant to testify while holding a teddy bear.

## II.

### Use of Out–of–Court Videotape for Cross–examination Purposes

Honolulu Police Department Detective Timothy Mimaki, who was assigned to investigate the sexual abuse complaint against Defendant, interviewed Complainant on videotape at the Children's Advocacy Center a few hours after the alleged incident. On the videotape, Complainant allegedly asserted that Defendant "dug" his finger into her vagina.

The videotape was never introduced into evidence at trial. However, on cross–examination, the prosecutor repeatedly questioned Defendant about the substance of Complainant's videotaped allegations:

Q. . . . Mr. Palabay, you told us that you saw [Complainant's] tape?

A. Yes.

Q. And in the tape, she says that you dug your finger in her vagina?

A. She said that in the tape.

Q. And that you also — when you dug your finger into her —

A. I didn't dig my finger into her —

Q. The question is this. I'm not asking you what you're answering. The question is this. In the tape, the child also said that when you dug your finger into her

vagina that part of her underwear was also dug into her vagina?

A. No. I just rubbed the top of her vagina.

Q. The question is this. Didn't the child say —

A. Yes.

Q. — that —

A. On the tape, she said that.

Q. She said that?

A. Yes.

\* \* \*

Q. ... So the child reported in the tape that you dug your finger in her vagina on a day that you had masturbated in her house?

A. What she said on the tape, yes.

Q. And the child reported on the tape that you dug your finger in her vagina on the very day that you ejaculated in her house?

A. If she said that on the tape, yes.

Q. The child said on the tape that you dug your finger in her vagina on a day that you were watching porno flicks in the house?

A. If she said that on the tape, yes.

\* \* \*

Q. ... The child said that you put your finger in her vagina on the very date that you also put your hand on her breast?

A. I did not put my finger in her vagina.

Q. The question, sir, is on the very date that you put your hand on her breast, she reported to the police that you also put your finger in her vagina; is that correct?

A. I did not put my finger in her vagina.

\* \* \*

> Q. On the very date that you just so happened to put your hand on her breast, the child reported that you put your finger in her vagina?
>
> A. If she reported it, okay. I didn't —

June 27, 1991 Transcript at 153–57.

Defendant argues that the foregoing questioning was clearly improper, since it was based on out–of–court statements which were offered for their truth and thus constituted inadmissible hearsay under Hawai'i Rules of Evidence (HRE) 801[2] and 802.[3] We agree.

We find no merit to the State's contention that the videotaped statements are "prior consistent statements" which can be admitted into evidence to rehabilitate Complainant's credibility under HRE 613(c), or as a hearsay exception under HRE 802.1(2).

HRE 613(c) provides:

> Evidence of a statement previously made by a witness that is consistent with the witness' testimony at the trial is admissible to support the witness' credibility only if it is offered after:
>
> (1) Evidence of the witness' prior inconsistent statement has been admitted for the purpose of attacking the witness' credibility, and the consistent statement was made before the inconsistent statement; or
>
> (2) An express or implied charge has been made that the witness' testimony at the trial is

---

[2] HRE 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

[3] HRE 802, the hearsay rule, provides that "[h]earsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawai'i supreme court, or by statute."

recently fabricated or is influenced by bias or other improper motive, and the consistent statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen; or

(3) The witness' credibility has been attacked at the trial by imputation of inaccurate memory, and the consistent statement was made when the event was recent and the witness' memory fresh.

Therefore, in order to trigger the use of a prior consistent statement under HRE 613(c), it is a foundational requirement that the credibility of the witness who uttered the statement be first attacked by one of three means: (1) a prior inconsistent statement; (2) a charge that the witness' testimony was recently fabricated or influenced by bias or improper motive; or (3) an imputation that the witness had an inaccurate memory.[4] Only when the credibility of the witness has been so impeached will a prior consistent statement of the witness be admissible for rehabilitation purposes.

---

[4] According to the legislative commentary to HRE 613, Rule 613 effects the same result as the supreme court's decision in *State v. Altergott*, 57 Haw. 492, 559 P.2d 728 (1977). In *Altergott*, the court said:

There are circumstances in which the prior consistent statement of a witness may be offered to bolster the credibility of the witness. Since the witness in such cases is also the declarant and is subject to cross–examination, the prior consistent statement is not hearsay and is not properly excluded on that ground. *A prior consistent statement of a witness who has merely testified in direct examination without impeachment, is ordinarily excluded because it is unnecessary and valueless.* However, a witness who has been impeached may be rehabilitated by showing prior consistent statements. McCormick suggests that even if impeachment of a witness amounts only to an imputation of inaccurate memory, the "consistent statement made when the event was recent and the memory fresh should be received in support."

57 Haw. at 504, 559 P.2d at 736 (citations omitted; emphasis added).

In the instant case, Complainant's credibility was never attacked by any of the means set forth in HRE 613(c).

The State suggests that Complainant was impeached when Defendant testified to facts that contradicted her version of the facts. However, such contradiction does not amount to a "prior inconsistent statement" of Complainant so as to constitute an attack on her credibility. *Cf. State v. Rabe*, 5 Haw. App. 251, 260, 687 P.2d 554, 561 (1984) (contradiction of a witness' version of the facts does not constitute an attack on the witness' character for truthfulness so as to allow evidence of the witness' character for truthfulness to be admitted into evidence under HRE 608(a)(2)).

Further, we reject the State's contention that Defendant, by objecting to leading questions posed to Complainant by the prosecutor about the events that occurred on the night in question, implied that Complainant's testimony was recently fabricated or that Complainant had an inaccurate memory and thus impeached her credibility. There is no evidence on the record to support this contention. Indeed, when the prosecutor argued that use of the leading questions was justified because Complainant was a child and was "having a hard time remembering everything that happened," June 27, 1991 Transcript at 44, defense counsel specifically responded: "Your Honor, I think that the witness has a good memory." *Id.*

The State's argument that Complainant's videotaped statements were admissible into evidence as an exception to the hearsay rule under HRE 802.1(2) is equally without merit. HRE 802.1(2) provides:

> **Hearsay exception; prior statements by witnesses.** The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

> \* \* \*

(2) Consistent statement. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is consistent with the declarant's testimony, and the statement is offered in compliance with rule 613(c).

The record in the instant case indicates that Complainant was never subjected to cross-examination concerning her prior video-taped statements to the police. We have already concluded that Complainant's prior videotaped statements could not be offered into evidence under HRE 613(c). Therefore, the foundational requirements for admission of the videotaped statements under HRE 802.1(2) were never satisfied.

## III.

### Prosecutorial Misconduct

Defendant claims that the State engaged in prosecutorial misconduct when it permitted Complainant to hold a teddy bear while testifying and cross-examined Defendant about Complainant's prior videotaped statements to the police.

The California Court of Appeals for the 5th District has stated that:

It is settled that a mere mistake relative to the admissibility of proffered evidence is not misconduct in the absence of a showing that the prosecutor was not acting in good faith. The term "misconduct," when applied to an act of an attorney, implies a dishonest act or an attempt to persuade the court or jury by use of deceptive or reprehensible methods.

*People v. Sigal*, 249 Cal. App. 2d 299, 310–11, 57 Cal. Rptr. 541, 549 (1967) (citations omitted).

Similarly, the Pennsylvania Supreme Court has held that no basis exists for the claim of prosecutorial misconduct where the improper questioning was not intended to inflame the passions and

prejudices of the jury to the extent that the defendant was deprived of a fair trial. *Commonwealth v. Fahy*, 512 Pa. 298, 314, 516 A.2d 689, 697 (1986). *See also Brown v. State*, 632 S.W.2d 191, 193 (Tex. App. 1982); 23A C.J.S. *Criminal Law* 1250 (1989).

In the instant case, there is no evidence that Complainant's decision to hold a teddy bear at trial was in any way prompted by the prosecutor or staged as a trial tactic. Furthermore, nothing in the record suggests that the prosecutor even knew beforehand that Complainant would hold a teddy bear to testify. The record does suggest, however, that Complainant was very fond of teddy bears. Indeed, at the start of the trial, defense counsel presented a motion in limine, seeking to exclude photos of Complainant's bedroom which showed "dressers in the room that have little teddy bears on them, and also a teddy bear on the wall." June 26, 1991 Transcript at 5–6. Defense counsel argued that the photos were inflammatory because they emphasized Complainant's "childlike nature," *id.*, and the State agreed not to introduce the photos into evidence. In view of the State's agreement, it can be reasonably argued that when the prosecutor knowingly permitted the Complainant to hold a teddy bear while testifying, then such action evidenced bad faith and amounted to prosecutorial misconduct.

With respect to Defendant's contention that the prosecutor's cross–examination of Defendant by reference to Complainant's videotaped statements constitutes prosecutorial misconduct, we disagree. The record indicates that the form of questioning engaged in by the prosecutor was suggested by the trial judge, after defense counsel objected to the following question as calling for speculation:

Q. Isn't it on the very day that you were playing
with your penis that the child reported all of this?

June 27, 1991 Transcript at 152. In ruling on the objection, the trial court said:

It may call for speculation as to whether or not he
knows that the child reported. I think you can rephrase

the question to ask if that was not stated on the [video] tape that was taken that day [at the Child Advocacy Center].

*Id.* at 153.

Under the circumstances, the questioning, while improper, does not constitute misconduct.

## IV.

## Effect of Errors;
## Motion for Mistrial

We have determined that it was error for Complainant to have testified while holding a teddy bear, absent a finding of compelling necessity, and for the State to have cross–examined Defendant about the substance of Complainant's videotaped statements, which were inadmissible hearsay. We will assume, for the purposes of this opinion, that the actions of the prosecutor in permitting the Complainant to testify while holding a teddy bear amounted to prosecutorial misconduct. We must now determine whether the cumulative effect of these errors so prejudiced Defendant's right to a fair and impartial trial, that his motion for mistrial was improperly denied and his conviction should be vacated.

A denial of a motion for mistrial is reviewed under the abuse of discretion standard. *State v. Iaukea*, 56 Haw. 343, 354, 537 P.2d 724, 732 (1975).

In reviewing a conviction on appeal, we must determine whether the errors committed at trial were harmless beyond a reasonable doubt. *State v. Perez*, 64 Haw. 232, 234, 638 P.2d 335, 337 (1981). The Hawai'i Supreme Court has noted that:

Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes, whether there is a reasonable

possibility that the error might have contributed to the conviction.

*State v. Huihui*, 62 Haw. 142, 145, 612 P.2d 115, 117 (1980).

The supreme court has also instructed that:

[E]ven where error occurs, there will be no reversal where on the record as a whole, no prejudice to appellant has resulted. The decision depends upon the nature and quantum of proof deduced and the type of error committed. ... Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless.

*State v. Rivera*, 62 Haw. 120, 127–28, 612 P.2d 526, 531 (1980) (citations omitted).

In reviewing allegations of prosecutorial misconduct, the test for reversal is whether the prosecutor's actions so prejudiced the defendant as to deny him a fair trial. *State v. Sugimoto*, 62 Haw. 259, 267, 614 P.2d 386, 392 (1980). If the overwhelming evidence, in the context of the entire record, indicates defendant's guilt, the prejudicial effect of a prosecutor's misconduct may be rendered harmless. *State v. Kahalewai*, 55 Haw. 127, 129, 516 P.2d 336, 338 (1973).

Applying these standards, we find beyond a reasonable doubt, that the errors committed at trial had no reasonable possibility of altering the outcome of the trial and were thus harmless.

The pivotal issue in this case was whether Defendant inserted his finger into Complainant's vagina. While the testimony of Complainant and Defendant conflicted on this issue, Complainant's version of the facts was corroborated by a neutral witness, Dr. Jeremy Lam, a pediatrician with the Sex Abuse Treatment Center at Kapiolani Medical Center, who performed a pelvic examination on Complainant only hours after the alleged sexual

abuse incident. Dr. Lam testified that his examination revealed inflammation and trauma to Complainant's vagina:

> Specifically, there was what we call erythema at the opening of the vagina, which is redness and inflammation. There was pain when I — pain on the gauze dabbing for blood. In other words, when you just touch gently with a gauze, it was painful. Her hymen, which is a round membrane at the entrance to the vagina, was slightly dilated and irregular but circular. And the introitus, which is the area to the opening to the vagina, was also red and inflamed.

June 26, 1991 Transcript at 25–26. Dr. Lam explained that "the introitus begins the inner genitalia" of a woman's body and that the redness he saw was evenly and circumferentially distributed around the outside of Complainant's introitus. *Id.* at 28–29. He further stated that the normal coloring of the female genitalia is pink and that Complainant's redness was indicative of "inflammation and trauma." *Id.* at 30. While Dr. Lam admitted, on cross–examination, that this kind of redness could have been caused by an infection of some kind, *id.* at 33–34, he also testified that the trauma exhibited would "most probabl[y]" be caused by something poking directly at the introitus. *Id.*

There is thus overwhelming and compelling evidence on the record tending to show that Defendant was guilty beyond a reasonable doubt of the charges against him. Furthermore, we are convinced, based on our review of the record, that the errors below did not contribute to Defendant's conviction or deprive him of a fair trial.

While Defendant's first objection to Complainant's holding of a teddy bear was overruled, the trial court did, shortly thereafter, sustain Defendant's second objection.[5] Therefore, it is highly

---

[5] *See supra* note 1.

unlikely that the jury's verdict was swayed by the brief presence of the stuffed animal.

Moreover, while the cross–examination of Defendant by reference to Complainant's out–of–court videotaped statements was improper, it does not appear from the record that the questioning contributed to the conviction. Complainant had already testified that Defendant put his finger in her vagina, and therefore, her prior consistent statements were excludable as cumulative, superfluous, and unnecessary.[6] Since Defendant had vehemently denied Complainant's accusations on cross–examination, the questioning merely served to highlight for the jury the main issue involved in this case.

## CONCLUSION

We, therefore, conclude that the errors committed at trial were harmless beyond a reasonable doubt, and the trial court did not abuse its discretion in denying Defendant's motion for a mistrial.

Affirmed.

*Lynette Mah Matsushima* and *Edward K. Harada*, Deputy Public Defenders, on the briefs for defendant–appellant.

*Caroline M. Mee*, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff–appellee.

---

[6] *See supra* note 3.