The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 18, 2021

## 2021COA18

**No. 16CA2170, *People v. Collins* — Crimes — Sexual Assault on
a Child; Criminal Law — Trial Proceedings — Use of a Court
Facility Dog; Constitutional Law — Sixth Amendment —
Confrontation Clause**

In this criminal appeal from a conviction for sexual assault on

a child, a division of the court of appeals addresses an issue of first

impression: whether the trial court violated defendant's

confrontation rights when it allowed a child victim to have a court

facility dog at her feet while she testified during trial. On appeal,

defendant argues that the presence of the court facility dog violated

his confrontation rights because the dog's presence mitigated this

child victim's discomfort about naming defendant as her abuser in

court, lessening the reliability of her testimony.

Because the division concludes that defendant's right to

confrontation doesn't carry with it right to impose discomfort on an

accusing witness, and because the trial court's findings that all confrontation requirements were met have record support, the division rejects defendant's confrontation claim. Because the division also concludes that the other evidentiary issues that defendant raises on appeal don't warrant reversal, the division affirms the convictions. But, because of a clerical error in the mittimus, the division remands the case for the limited purpose of correcting the mittimus.

COLORADO COURT OF APPEALS                                    **2021COA18**

Court of Appeals No. 16CA2170
Mesa District Court No. 15CR524
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cory Rex Collins,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH INSTRUCTIONS

Division V
Opinion by JUDGE WELLING
J. Jones and Gomez, JJ., concur

Announced February 18, 2021

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Tracy C. Renner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    We must determine whether the trial court violated defendant Cory Collins's confrontation rights when it allowed the child victim to have a court facility dog at her feet while she testified during trial.

¶ 2    At the time of the prosecution's motion requesting a court facility dog, there was no statutory guidance.  But in 2019, the General Assembly enacted a statute authorizing the use of court facility dogs.  We know of no Colorado case, however, that has analyzed the defendant's argument here — that the presence of the court facility dog violated his confrontation rights.

¶ 3    Because we conclude that Collins's right to confrontation doesn't carry with it right to impose discomfort on an accusing witness, and because the trial court's findings that all confrontation requirements were met have record support, we reject Collins's confrontation claim.  Because we also conclude that the other evidentiary issues that Collins raises on appeal don't warrant reversal, we affirm the convictions.  But, because of a clerical error in the mittimus, we remand the case for the limited purpose of correcting the mittimus.

## I. Background

¶ 4    Between January 2013 and November 2014, Collins sexually abused T.M.[1]  At the time of the assaults, Collins was in a romantic relationship with T.M.'s mother and lived with her and T.M.  T.M. was between the ages of three and five years old at the time of the abuse.  At the time, T.M.'s mother had unstable housing and was using drugs.

¶ 5    In September 2013, the Department of Human Services (the Department) contacted T.M.'s biological father, expressing concern about T.M.'s living situation with her mother.  T.M.'s father sought an emergency protective order to take temporary custody of her.  Shortly thereafter, she began living with her father, his wife (T.M.'s step-mother), and their three children.  Eventually, T.M.'s mother's parental rights were terminated and T.M. remained in her father's custody.

¶ 6    Soon after T.M. moved into her father's house, her father and step-mother began to suspect that she'd been sexually abused

---

[1] During the pre-trial investigation, T.M.'s name changed from T.M. to E.W.  She is referenced by both names in the record.  For the sake of consistency and simplicity, we refer to her as T.M. in this opinion.

when she lived with her mother. T.M. had problems urinating and didn't understand the concept of privacy between family members. T.M. told her father that she'd "played the S game"[2] (or "sex game") with someone named "Andy."

¶ 7     Her father reported T.M.'s disclosure of playing the "S game" to police. A forensic interviewer questioned T.M. about this in October 2013. T.M. didn't repeat the disclosure regarding the "S game" to the interviewer. Because T.M. didn't disclose any abuse, police didn't conduct an additional investigation at that time.

¶ 8     In the spring of 2014, T.M. took off her clothes and got into bed with her step-brother, who was also a child. Her father and step-mother questioned T.M. about this behavior and she referred to it as the "S game." T.M. went on to say that she had "played the S game" with Collins. When questioned further by her father and step-mother, T.M. disclosed that Collins had touched her inappropriately. T.M. also told them that she didn't like Collins, describing him as "gross" and "not safe." Her father and step-mother reported these disclosures to the Department. But after an

---

[2] T.M.'s stepmother testified that T.M. explained to her that the "S game" is where "[y]ou get naked and you get under the covers."

3

initial investigation, the Department concluded that the allegations against Collins were unfounded.

¶ 9    Soon after, T.M. started seeing a counselor.  T.M. told her counselor that Collins had "touched her privates."  Her counselor, in turn, reported this to the Department.

¶ 10    In November 2014, a police detective interviewed T.M.  T.M. told the detective that Collins had touched her inappropriately and was able to draw a picture of his genitals.  When asked if she had been touched by anyone other than Collins, she said no.  Based on this information, police arrested Collins.

¶ 11    Collins was charged with two counts of sexual assault on a child under age fifteen by one in a position of trust and as a pattern of abuse; one count of sexual assault on a child as a pattern of abuse; and one count of sexual assault on a child as a pattern of abuse.

¶ 12    There were two jury trials.  The first ended in a mistrial. T.M. testified at both trials.  Collins didn't testify.  His theory of defense was that although he never touched T.M. inappropriately, T.M. had been sexually abused by "Andy," a friend of T.M.'s mother who, Collins argued, was a known sex offender.  Collins contended that

4

T.M. was coerced by her mother to accuse him — and not Andy — of touching her inappropriately because her mother was angry with him. Collins also argued that T.M.'s parents' and therapist's repeated questioning about Collins subtly influenced T.M. to name him, instead of Andy, as the person who had touched her inappropriately.

¶ 13　The jury found Collins guilty of sexual assault on a child and sexual assault on a child by one in a position of trust (with an additional finding that T.M. was a protected person because of her age).[3] Collins was sentenced to an indeterminate concurrent sentence of four years to life in the custody of the Department of Corrections.

## II.　Analysis

¶ 14　On appeal, Collins raises four issues. First, Collins contends that the trial court abused its discretion by allowing T.M. to testify, arguing that she was incompetent due to her age. Second, Collins contends that the trial court deprived him of his federal and state constitutional right to confrontation by allowing a court facility dog

---

[3] Before closing argument during the second trial, the prosecution moved to dismiss the pattern charges.

(also commonly referred to as a comfort or support dog) to sit at T.M.'s feet while she testified. Third, Collins contends that the trial court erred by permitting the prosecutor to ask its expert witness certain questions that called for the witness to improperly bolster T.M.'s testimony. And fourth, Collins contends that the mittimus must be amended to reflect that the pattern of abuse sentence enhancer was dismissed.

¶ 15 We address each issue below and conclude that (1) the court didn't abuse its discretion by allowing T.M. to testify; (2) the court didn't violate Collins's confrontation rights by allowing a court facility dog to sit at T.M.'s feet while she testified; (3) although the trial court erred by permitting a prosecution expert to answer certain questions, the error was harmless; and (4) the case must be remanded to correct the mittimus.

A. T.M.'s Competency to Testify

¶ 16 First, Collins argues that the trial court abused its discretion in two regards when it found T.M. competent to testify. First, he contends that the trial court erred when it considered previously recorded forensic interviews of T.M. while assessing T.M.'s competence to testify. And second, Collins contends that the trial

6

court's factual findings regarding T.M.'s competence aren't supported by the record and its legal conclusion isn't based on the correct legal standard. We aren't persuaded.

### 1. Legal Principles

¶ 17 Subject to certain exceptions, all persons are competent to be witnesses. *See* § 13-90-101, C.R.S. 2020; CRE 601. But children under ten years of age who appear incapable of "receiving just impressions" or of relating them truthfully aren't legally competent and may not be called as witnesses. § 13-90-106(1)(a), (b)(I), C.R.S. 2020. A child under ten years of age may testify, however, if "the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." § 13-90-106(1)(b)(II).

¶ 18 A trial court "has broad discretion in determining how a competency hearing will be held." *People v. Dist. Ct.,* 776 P.2d 1083, 1087 n.4 (Colo. 1989) (citation omitted) (indicating that a competency hearing may be held in the judge's chambers if it eases the child's anxiety); *see also People v. Trujillo,* 923 P.2d 277, 281 (Colo. App. 1996) ("the manner and scope of examination should be left to the sound discretion of the trial court").

7

¶ 19    We review a preserved statutory claim regarding competence of a child witness for an abuse of discretion. *People v. Wittrein,* 221 P.3d 1076, 1079 (Colo. 2009); *People v. Dist. Ct.,* 791 P.2d 682, 684 (Colo. 1990). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law. *People v. Lindsey,* 2018 COA 96M, ¶ 5.

## 2.    Additional Factual Background

¶ 20    Two months before the first trial, the court conducted a competency hearing for T.M., then six years old. During the hearing, T.M. answered questions posed by the court, the prosecutor, and defense counsel. She accurately stated her age and who she lives with. She told the court the names of two of her teachers and her best friend. She also corrected defense counsel when he misstated the term she uses to refer to her grandfather. She explained the difference between the truth and a lie and described telling the truth as "right." She said that, in her house, "[y]ou get in trouble" for lying.

¶ 21    During the hearing, the trial court admitted recordings of two forensic interviews of T.M.; one conducted in 2013, the other in 2014. The prosecution introduced T.M.'s interview from 2014, and

8

Collins didn't object. Collins then introduced, over the prosecution's objection, a copy of T.M.'s interview from 2013.

¶ 22　　After watching the 2013 interview, the trial court found that T.M. was able to identify her favorite colors, knew the difference between a "real" bear and a toy bear, and was able to identify body parts.

¶ 23　　After watching the 2014 interview, the trial court found that T.M. "was able to spell her name, able to identify other people in her house, and whether the other kids in the home were older or younger." The court also found that "when asked to explain why she was talking to [police], T.M. stated that she was there because [Collins] touched T.M.'s privates and T.M. touched [Collins's] privates." Finally, the court found that during the 2014 interview, T.M. was able to relate that Collins had hair around his genitals. She also demonstrated the way Collins's hand moved when he touched her and how her hand moved when she touched him.

¶ 24　　In January 2016, the trial court issued a written order, concluding that T.M. was competent to testify. In so ruling, the court found that T.M. was "sufficiently able to relate events or facts in language appropriate for a child her age." The court based its

ruling on its observations during the competency hearing, as well as its review of the recorded forensic interviews from 2013 and 2014.

### 3. Analysis

¶ 25 First, we consider whether the trial court erred by reviewing and considering the two recorded forensic interviews when making its competency determination.[4]

¶ 26 Collins didn't object to the court's consideration of the recorded interviews, so we review for plain error.[5] *Hagos v. People,* 2012 CO 63, ¶ 14. Plain error is error that is obvious and that " so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction."

---

[4] Collins contends that the trial court violated his statutory and constitutional confrontation rights but he doesn't explain any further. This constitutional argument isn't adequately developed so we won't address it. *See* C.A.R. 28(a)(7)(B); *see also People v. Simpson,* 93 P.3d 551, 555 (Colo. App. 2003) (declining to address a "bald legal proposition" that isn't developed with supporting argument).

[5] As noted above, after the 2014 interview was admitted without objection at the prosecutor's request, the 2013 interview was admitted at Collins's request. The Attorney General contends that by requesting that the court admit the 2013 interview, Collins invited or waived the error that he advances on appeal. Collins disagrees. Because we conclude that the trial court didn't err (much less plainly err) by admitting and considering the forensic interviews, we don't need to resolve the issue of whether the alleged error was invited or waived.

10

*Id.* Collins contends that, while the trial court is granted broad discretion to conduct a competency hearing, its discretion applies only to the hearing itself, not to recordings taken earlier. He also contends, relying on *People v. Dist. Ct.,* 776 P.2d at 1087, that the trial court shouldn't have considered the recordings because competence at the time of the recordings isn't relevant to competency at the time of trial. We aren't persuaded.

¶ 27    While it's certainly true that competence is evaluated at the time of trial, when a challenge to competence is based on a witness's youth or immaturity, a demonstration of competence earlier is certainly relevant. Thus, the recordings of interviews of T.M. from 2013 and 2014 are evidence that go directly to the crux of the issue — whether T.M. could describe events about which she was being questioned in age-appropriate language. *See People v. Vialpando,* 804 P.2d 219, 224 (Colo. App. 1990). Accordingly, the trial court didn't err, much less plainly err, by considering T.M.'s two recorded forensic interviews — in addition to the evidence presented at the competency hearing itself — in assessing her competence to testify at trial.

11

¶ 28    Next, we turn to Collins's contention that trial court erred in its application of the competency statute.  For the first time on appeal, Collins contends that the trial court erred because (1) T.M. didn't identify Collins or describe the inappropriate touching during the competency hearing and (2) the record doesn't support a finding of competence.  We reject both contentions.

¶ 29    First, a child witness isn't required to describe the assailant or the underlying abuse for the trial court to make a determination that the child-witness is competent to testify.  *See Trujillo,* 923 P.2d at 281; *cf. Kentucky v. Stincer,* 482 U.S. 730, 741 (1987) ("[Q]uestions at a competency hearing usually are limited to matters that are unrelated to the basic issues of the trial." (citations omitted)).  T.M. didn't describe the details of the sexual abuse nor did she name Collins as her abuser during the competency hearing.  But this was for good reason — T.M. was never asked about the details of the sexual abuse because these types of questions aren't required during a competency hearing.  *See Stincer,* 482 U.S. at 741.  And while it's not required for a finding of competence, we note that during the recorded interviews, T.M. named Collins as the person who had touched her inappropriately.

12

¶ 30    Second, the record supports the trial court's finding that T.M. was competent to testify. T.M.'s testimony at the hearing established that she was able to correctly relate her name, her age, the name of her best friend, and the names of her family members. *See Vialpando,* 804 P.2d at 223 (the trial court didn't abuse its discretion by finding a child competent to testify where the child correctly related her grade in school, the defendant's first name, and the date of the sexual assault, and could distinguish between truth and a lie). T.M. was also able to distinguish the truth from a lie and promised to tell the truth. *See id.*; *see also Stackhouse v. People,* 2015 CO 48 ¶¶ 17-18; *Trujillo,* 921 P.2d at 281 (child was competent after she was able adequately to relate events or facts, knew the difference between the truth and a lie, knew the importance of telling the truth, and was able to relate sequences of events).

¶ 31    Thus, the record demonstrates that T.M. could properly answer questions about various facets of her life and that she did so in age-appropriate language. Accordingly, the trial court didn't abuse its discretion by finding her competent to testify at trial.

## B.    Court Facility Dog

¶ 32    Next, Collins contends that the trial court violated his confrontation rights when it allowed a court facility dog to sit at T.M.'s feet while she testified.  Specifically, Collins contends that the dog's presence mitigated T.M.'s discomfort about naming Collins as her abuser in court, lessening the reliability of her testimony and violating his state and federal confrontation rights.  Collins also contends that the prosecution failed to demonstrate a compelling need for the presence of a court facility dog that outweighed his confrontation rights.  We aren't persuaded.

1.    Additional Factual Background

¶ 33    Before the second trial, the prosecution requested that a court facility dog be allowed to sit at T.M.'s feet while she testified because she was anxious about testifying.[6]  Collins filed a written

---

[6] At the time of the prosecution's motion, no statutory provision expressly either allowed or prohibited the use of a court facility dog. Later, however, the Colorado General Assembly enacted a statute authorizing the use of court facility dogs.  *See* § 16-10-404, C.R.S. 2020; Ch. 138, sec. 1, § 16-10-404, 2019 Colo. Sess. Laws 1739-40.  That statute provides that a trial court "may, upon motion of a party or upon its own motion, order that a witness's testimony be offered while a court facility dog is in the courtroom during the testimony of the witness" in a criminal proceeding if the court makes certain findings by a preponderance of the evidence. § 16-10-404(2)(a).

objection, arguing, in part, that the use of a court facility dog violated his right to confrontation because "the process of confrontation necessarily requires a certain level of subtle emotional and psychological tension between the accused and the witness."

¶ 34    The trial court conducted a hearing at the prosecution's request.  The trial court found that the presence of a court facility dog didn't violate Collins's confrontation rights because "confrontation is with the witness" and the court facility dog didn't constitute "evidence in the case."  The trial court additionally found that the dog's presence would be useful to the efficiency of the trial, as the court observed during the first trial that T.M. "somewhat freezes and [had] a hard time testifying."[7]  The trial court also considered the Victims' Rights Act, noting that "it is the intent of the Legislature to assure that all victims of and witnesses to crimes are honored and protected by law enforcement agencies, prosecutors, and judges."  The trial court allowed T.M. to have a

---

[7] The prosecution's motion noted that the court facility dog was not present during T.M.'s previous testimony because no dogs were available.

15

court facility dog — a golden retriever named Tillie — sit at her feet while she testified. The trial court found,

> With everything that I have I am going to allow Tillie to be present. I do find that it is appropriate. *I do find that there has been showing that it would assist the child, in this case T.M., aka E.W. for testimony.* I have viewed Tillie in the courtroom in other cases. *She has not been a distraction.* In one recent case she was present with a child victim and quite frankly I think she was sleeping. I didn't see nor hear her.

(Emphasis added.)

¶ 35     The court concluded,

> In this case I'm going to have Tillie come in early. *She will be, as much as possible, outside of the view of the jury.* There will be an instruction that will be given, that the jury is not to make any inferences for or against either side due to Tillie's presence. I do find that she is professionally trained based on a curriculum — at least the documentation that shows what her certification is for. She will be leashed.

(Emphasis added.)

16

¶ 36    In order to avoid any unfair prejudice towards Collins, the trial

court arranged for Tillie to sit at T.M.'s feet, outside of the jurors'

view, while she testified.[8]

## 2.    Analysis

### a.    Confrontation

¶ 37    The United States Constitution provides, in relevant part, that

"[i]n all criminal prosecutions, the accused shall enjoy the right . . .

to be confronted with the witnesses against him."  U.S. Const.

amend. VI.  Similarly, the Colorado Constitution provides that "[i]n

criminal prosecutions the accused shall have the right . . . to meet

the witnesses against him face to face."  Colo. Const. art. II, § 16.

The Colorado Constitution secures identical rights as the federal

right to confrontation.  *People v. Phillips*, 2012 COA 176, ¶ 56.  The

purpose of the confrontation clause is "to prevent conviction by [e]x

---

[8] The court proposed a jury instruction related to Tillie's presence, but it was not given to the jury.  The court suggested the instruction was unnecessary because Tillie was out of the jurors' view.  Both defense counsel and the prosecutor agreed that it wasn't needed.  The prosecutor indicated that the instruction may "draw attention to something [the jury is] likely unaware of at this time."  Collins doesn't challenge on appeal the court's decision not to give the instruction, nor does he challenge the procedure that was employed that led to the jury being unaware of the dog's presence.

parte affidavits, to sift the conscience of the witness, and to test his recollection to see if his story is worthy of belief." *Id.* at ¶ 79 (quoting *People v. Bastardo,* 191 Colo. 521, 524, 554 P.2d 297, 300 (1976)).

¶ 38     Collins preserved this issue by filing a written objection, arguing that the prosecution hadn't established the need for a court facility dog and that the dog's presence would violate his confrontation rights.  We review a preserved Confrontation Clause issue de novo.  *People v. McFee,* 2016 COA 97, ¶ 28.

¶ 39     The right of confrontation generally requires that a witness testify under oath, in open court, and face-to-face with the defendant.  *Maryland v. Craig,* 497 U.S. 836, 845-46 (1990).  It also requires that a witness be subject to cross-examination by defense counsel and that the jury have the ability to observe the witness's demeanor while testifying.  *Id.*

¶ 40     Every requirement of confrontation was met here.  T.M. testified in open court and face-to-face with Collins, she took an oath prior to her testimony, she was subject to cross-examination by defense counsel, and the jury was able to observe her demeanor

while testifying. Collins doesn't dispute this; rather, he focuses on T.M.'s emotional state during her testimony.

¶ 41     Citing *Coy v. Iowa,* 487 U.S. 1012, 1020 (1988), Collins argues that Tillie's presence lessened T.M.'s anxiety about testifying and violated his right to confrontation because, he contends, she didn't feel the "degree of discomfort" a testifying accuser should be subject to. *See id.* ("[C]onstitutional protections have costs."). This argument fails.

¶ 42     We aren't persuaded that *Coy* informs our analysis. In *Coy,* the Supreme Court analyzed the trial court's decision to allow two child sexual assault victims to testify behind a large screen that enabled the defendant "dimly to perceive the witnesses, but the witnesses to see him not at all." *Id.* at 1014-15. The Court held that the defendant's right to confrontation was violated because the screen enabled the witnesses to avoid viewing the defendant as they testified. *Id.* at 1012. In so ruling, the Court reasoned that the defendant's presence "may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult." *Id.* at 1019.

¶ 43     Collins's reliance on *Coy* is misplaced.  *Coy* doesn't stand for the proposition that crime victims must endure stress while testifying to satisfy the right to confrontation.  While satisfying a defendant's right to confront his or her accuser may impose an unavoidable level of discomfort for the accusing witness, the right doesn't carry with it a prohibition on mitigating discomfort nor a right to impose discomfort.  Put simply, easing a testifying witness's discomfort doesn't violate a defendant's confrontation rights.

¶ 44     Additionally, T.M. could still physically see Collins while she testified.  This is unlike the child victims in *Coy* who were entirely shielded from seeing the defendant's face.  Here, the trial court exercised its special care to assist a young victim during her testimony, while still maintaining Collins's right to confront T.M. face-to-face.

¶ 45     And, while no Colorado appellate court has addressed whether the presence of a court facility dog violates a defendant's confrontation rights, other states' courts have rejected this notion. *See, e.g., State v. Millis,* 391 P.3d 1225, 1233 (Ariz. Ct. App. 2017) ("In keeping with the trial court's 'broad discretion' in managing trial conduct, this court will not disturb a trial court's ruling

regarding the use of a facility dog absent an abuse of discretion."
(citation omitted)); *People v. Spence,* 151 Cal. Rptr. 3d 374, 405
(Cal. Ct. App. 2012) (trial court "appropriately exercised its
discretion" by providing a therapy dog in this exercise of 'special
care to protect [the witness] from undue harassment or
embarrassment'"); *People v. Tohom,* 109 A.D.3d 253, 271-73 (N.Y.
App. Div. 2013) (a dog's presence didn't violate the defendant's right
to confront witnesses, citing the trial court's discretion to "fashion[ ]
an appropriate measure to address a testifying child witness's
emotional or psychological stress, based upon the particular needs
of that child"); *State v. Dye*, 309 P.3d 1192, 1194 (Wash. Ct. App.
2013) (rejecting confrontation challenge, concluding that the "trial
court acted within its broad discretion when it determined that . . .
the facility dog provided by the prosecutor's office to the victim . . .
was needed in light of [the victim]'s severe developmental
disabilities in order for [the victim] to testify adequately").  We agree
with these decisions and conclude that permitting a witness to
testify in the presence of a comfort animal doesn't violate a
defendant's confrontation rights.

b.   Necessity

¶ 46    Next, Collins argues that the trial court erred by allowing Tillie to accompany T.M. without first requiring a showing of necessity by the prosecution.  Whether the trial court applied the correct legal standard is a question of law that we review de novo.  *People v. Triplett,* 2016 COA 87, ¶ 28.

¶ 47    At the time of trial, Colorado didn't have a statute governing a party's request for a court facility dog.  And there isn't any Colorado case law addressing whether a showing of necessity is required before a court authorizes the use of a court facility animal over a party's objection.  Courts in other jurisdictions, however, have addressed this issue.

¶ 48    There is a split of outside authority on whether the prosecution must prove that a witness needs a specific support or comfort item before the court can allow its use or presence over the defense's objection.  *Compare State v. Dickson,* 337 S.W.3d 733, 743 (Mo. Ct. App. 2011) (no showing of necessity was required where the witness was testifying about traumatic events and no reference was made to the comfort items in the jury's presence), *and Sperling v. State,* 924 S.W.2d 722, 726 (Tex. Ct. App. 1996) (no showing of necessity was required, as the appellate court couldn't conclude

22

that a comfort item "constituted demonstrative evidence which engendered sympathy in the minds and hearts of the jury, validated the child-victim's unimpeached credibility, or deprived appellant of his constitutional right of confrontation"), *with Gomez v. State,* 25 A.3d 786, 798-99 (Del. 2011) (adopting "substantial need" standard, requiring the prosecution to show that the item is necessary to facilitate the witness's testimony), *and State v. Palabay,* 844 P.2d 1, 2 (Haw. Ct. App. 1992) (adopting "compelling necessity" standard, requiring the prosecution to show that the item is necessary to facilitate the witness's testimony).

¶ 49    The majority of courts in other jurisdictions, however, have concluded that a finding of necessity isn't required.  *See, e.g.*, *People v. Chenault,* 175 Cal. Rptr. 3d 1, 11 (Cal. Ct. App. 2014); *State v. Devon D.,* 138 A.3d 849, 864 (Conn. 2016); *Dickson,* 337 S.W.3d at 743; *Tohom,* 109 A.D.3d at 266; *Sperling,* 924 S.W.2d at 726; *Dye,* 309 P.3d at 1199; *contra Gomez,* 25 A.3d at 798-99; *Palabay,* 844 P.2d at 2; *State v. Cliff,* 782 P.2d 44, 45 (Idaho Ct. App. 1989); *State v. Hakimi,* 98 P.3d 809, 811 (Wash. Ct. App. 2004) (concluding that the court didn't abuse its discretion where

23

the child victim was allowed to hold a doll while testifying, due to a "peculiar need find some security in an otherwise insecure setting").

¶ 50    We are persuaded by those cases that have rejected requiring the proponent of the use or presence of a comfort item or animal to show necessity. Requiring a lesser showing is consistent with the Victims' Rights Act, as well as the considerable latitude that appellate courts afford trial judges in controlling courtroom decorum. *See, e.g.*, *People v. Marquantte*, 923 P.2d 180, 183 (Colo. App. 1995) ("A court has broad discretion to determine what actions are necessary to regulate the courtroom."); *People v. Angel*, 790 P.2d 844, 846 (Colo. App. 1989) ("[A] trial court does have broad discretion to regulate its courtroom and has inherent powers to preserve order and to prevent interference with or obstruction of justice."). *Cf. People v. Whitman*, 205 P.3d 371, 379 (Colo. App. 2007) ("Providing a young, distracted, and emotional witness with an environment designed to promote the witness's complete testimony satisfies either the overriding or substantial interest standards.").

¶ 51    Here, the trial court found that (1) Tillie's presence would assist the witness; (2) based on prior interactions, Tillie wouldn't

interfere with the proceedings; and (3) Tillie would remain out of view of the jury and wouldn't have a prejudicial impact on the jury. These findings are supported by the record, and we conclude that, in the absence of a statute imposing a requirement of necessity, no greater showing was required.

¶ 52    Accordingly, the trial court didn't abuse its discretion by allowing T.M. to testify with Tillie at her feet. *See Tohom,* 109 A.D.3d at 267 (a "judge conducting a public trial is empowered to control the proceedings in whatever manner may be consistent with the demands of decorum and due process").

### C.    Expert Testimony

¶ 53    Collins next contends that the trial court erred by admitting portions of an expert's testimony that, he argues, improperly bolstered T.M.'s testimony.

#### 1.    Additional Factual Background

¶ 54    During the trial, the prosecution presented testimony by Cheryl Young, a therapist. Without objection, the court accepted Young as an expert in

- child sexual assault and abuse;
- reactions of child victims during a sexual assault;

25

- patterns of disclosure in outcry statements of child sexual assault and abuse victims;

- the forensic protocol of child sexual abuse interviews;

- victim/offender relationship dynamics;

- the process of memory; and

- suggestibility and factual situations where false allegations and fabrications are common.

Young didn't talk to any of the witnesses or read any of the reports from this case.

¶ 55    Collins contends that portions of Young's testimony were inadmissible in two regards.  First, he contends that Young's opinion that a particular pattern of disclosure isn't unusual for a child was impermissible.  Second, he contends that Young's opinion that it would be uncommon for a child to lie about having experienced a sexual assault was impermissible bolstering.

¶ 56    We agree that in both instances, the prosecutor's line of questioning was improper, but we conclude that the trial court's decision to allow Young to answer the prosecutor's questions was harmless.

2.    Applicable Legal Principles

26

¶ 57     An expert witness may provide opinion testimony so long as

"the expert's specialized knowledge will assist the jury in

understanding the evidence or in determining a fact in issue."

*People v. Mintz,* 165 P.3d 829, 831 (Colo. App. 2007).

¶ 58     An expert may not opine on a witness's credibility or that a

witness was telling the truth on a specific occasion.  *Wittrein,* 221

P.3d at 1081 (citing *People v. Eppens,* 979 P.2d 14, 17 (Colo. 1999)).

Thus, "experts may not offer their direct opinion on a child victim's

truthfulness or their opinion on whether children tend to fabricate

sexual abuse allegations."  *Id.*

¶ 59     Although expert testimony isn't permitted to bolster a victim's

credibility, an expert may testify concerning whether a sexual

assault victim's behavior or demeanor was consistent with the

typical behavior of victims of abuse.  *People v. Glasser,* 293 P.3d 68,

78 (Colo. App. 2011).  This type of testimony is admissible because

it assists the jury in understanding a child victim's behavior after

the incident and explains why the victim acted the way he or she

did.  *People v. Relaford,* 2016 COA 99, ¶ 28.  Testimony that

provides relevant insight into the "puzzling" aspects of a child's

behavior "is helpful and appropriate in cases of sexual abuse of children." *Id.* (quoting *Whitman,* 205 P.3d at 383).

### 3. Standard of Review

¶ 60      We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Kutzly v. People,* 2019 CO 55, ¶ 8. A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law. *People v. Salas,* 2017 COA 63, ¶ 30.

¶ 61      Because Collins's counsel objected to Young's testimony at trial, this issue is preserved, and we apply harmless error review. *See Hagos,* ¶ 12. We will reverse only if the error "affects the substantial rights of the parties" — that is, the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People,* 715 P.2d 338, 342 (Colo. 1986)).

¶ 62      We now turn to the portions of Young's testimony that Collins challenges.

### 4. Pattern of Disclosure Expert Testimony

¶ 63      Collins contends that the trial court abused its discretion by allowing Young's opinion that a specific pattern of disclosure by a

child wasn't unusual.  The prosecutor questioned Young and

elicited the following testimony:

> [Prosecutor]: Following a situation where there is [sic] potentially multiple outcries leading to a forensic interview where there's no disclosure, that [sic] then followed by subsequent multiple outcries to a number of people, that then followed by a forensic interview where there is a disclosure, *does that in your opinion indicate anything with respect to that child's experience?*
>
> [Defense counsel]: Objection Your Honor based on my previous record.[9]
>
> THE COURT: At this time the objection is overruled, again based on the record made at the bench and the question that has been specifically asked.
>
> [Young]: So if I were thinking of a preschool or younger child that there is a series of outcries or certain behaviors, a formal interview where there may not be any kind of an outcry to that interviewer, followed by more outcries or behaviors, *I would not find that process or history unusual in that age of a child where there are allegations of sexual abuse.*

(Emphasis added.)

---

[9] Defense counsel had previously objected to a similar question from the prosecutor, asking Young to opine on a situation in which a "preschool aged child . . . crawl[ed] into bed naked with a sibling . . . ."  The trial court overruled the objection.

¶ 64     Collins contends that the hypothetical was so closely tailored to the facts of the case that Young's answer constituted an improper opinion on the veracity of T.M.'s allegations. We agree with Collins that the prosecutor's question was improper.

¶ 65     The facts at issue in the case closely match the hypothetical given to Young. T.M. disclosed several times to her father and step-mother, but didn't disclose when she was interviewed by a police detective. But then T.M. later disclosed in an interview with a different police detective.

¶ 66     The hypothetical therefore invited an improper opinion about whether T.M.'s accusations should be believed notwithstanding her disclosure pattern. It was calculated to elicit an opinion that T.M.'s allegations of abuse were still reliable (i.e., that she was telling the truth on a particular occasion). That isn't a proper subject for expert testimony. *See* CRE 608(a)(1); *see also Venalonzo*, ¶ 32 (CRE 608(a) "applies to both direct and indirect implications of a child's truthfulness"); *cf. People v. Cernazanu*, 2015 COA 122, ¶ 21 (The "general characteristics" of credibility that the witness testified to "were not those of a class of victims who had experienced child incest, sex assault, rape trauma, or the like. They were, instead,

'characteristics' *peculiar* to [the victim], which were directly indicative of [the victim's] *credibility*, and which were relevant *only* to ascertaining whether [the victim] was telling the truth on a specific occasion." (emphasis in original)).

¶ 67　When a hypothetical is so closely tailored to the distinctive facts of the case at hand, as it was here, the question ceases to be about any child and, instead, becomes a question about the particular child. *Cernazanu*, ¶ 21. And when the question is, as a practical matter, about the child in this case, it risks calling for an opinion of the credibility of that particular child. *Id.* Indeed, the prosecutor asked Young to opine on a specific child — "does that in your opinion indicate anything with respect to *that child's experience*?" — not just any child. *See Venalonzo*, ¶ 33; *People v. Snook*, 745 P.2d 647, 649 (Colo. 1987) (testimony that another witness is credible on a particular occasion is especially problematic where the outcome of the case turns on which version of that witness's conflicting telling of events is worthy of belief).

¶ 68　While the question on its face was improper, Young's answer rendered the court's erroneous decision to permit her to answer harmless. Young didn't opine on which disclosure was more

31

accurate or should be believed, but simply testified that it wasn't unusual for a child to engage in that particular disclosure pattern. Young's testimony didn't amount to an opinion that T.M. was telling the truth on a particular occasion. *See Venalonzo*, ¶ 33; *Snook* 745 P.2d at 649. While the prosecutor's question ran the considerable risk that it may have elicited an improper answer, the answer didn't run afoul of rules guiding expert opinion testimony. Thus, even though the trial court erred by allowing Young to answer the improper question, because the answer wasn't improper, the error was harmless.

### 5. Sophistication to Lie Expert Testimony

¶ 69 Next, Collins contends that the court erred when it allowed Young to answer the prosecutor's questions regarding a child's sophistication to lie about having been sexually assaulted.

¶ 70 Young testified that "children lie about did they do their homework, did they clean their room, did they eat the last Pop-Tart that their brother was supposed to have. Yes, those are common behaviors and they are intended to avoid our disappointment and avoid our disapproval." She further testified, children are "not sophisticated cognitively" enough to plan and calculate a lie against

32

another person.  The prosecutor then elicited the following

testimony:

> [Prosecutor]: Based upon your prior answer
> you had in some ways distinguished preschool
> aged children from other groups of children,
> and so my question to you was that if in your
> opinion *do children generally have the
> sophistication to lie about having experienced
> sexual assault?*
>
> [Young]: It's kind of on their own volition
> independent of anybody else, do they in a
> calculated, intentional way make up a lie
> about — in an intentional type of way to get an
> adult into trouble, *it's a pretty sophisticated act
> and the vast majority of preschoolers
> independently or on their own that would be
> uncommon.  To say that children can't be
> influenced or coerced into making statements,
> that's a different set of circumstances.*  If we're
> talking independently on their own they don't
> have that cognitive sophistication and
> planning then I would stand by that.

(Emphasis added.)

¶ 71    The prosecutor's question to Young is similar to the line of

questioning that was found to be improper in *Snook.*  In *Snook,* an

expert testified that "children tend not to fabricate stories of sexual

abuse . . . ."  *Snook,* 745 P.2d at 648.  The court concluded that the

question elicited an answer from the expert that amounted to

improper bolstering of the victim's credibility.  *Id.* at 648-49.  The

33

court reasoned that the "jury's only conceivable use of such testimony would be as support for the complainant's truthful character." *Id.* at 649.

¶ 72 Similar to *Snook,* the prosecutor asked Young to comment on whether a child was likely to fabricate sexual assault. *Id.* Experts "may not offer their direct opinion on a child victim's truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations." *Wittrein,* 221 P.3d at 1081. And Young's testimony in response — that lying about sexual assault to get "an adult into trouble" is a "sophisticated act" that would be "uncommon" behavior for a child to engage in — amounted to support for T.M.'s credibility. *Id.* Thus, we conclude that the court erred by allowing Young to answer the question posed by the prosecutor.

¶ 73 But the error was ultimately harmless, for three reasons.

¶ 74 First, Young's testimony didn't directly refute Collins's theory of defense. *See People v. Kubuugu,* 2019 CO 9, ¶ 16 (holding that improperly admitted expert testimony wasn't harmless because the expert's testimony "was the only evidence that specifically refuted" the defendant's exculpatory testimony). The central issue in the case was which of T.M.'s disclosures the jury should believe — that

34

she was touched inappropriately by "Andy" or by Collins. Collins's theory of defense was that T.M. had (1) been abused by Andy and (2) then subtly coerced by the adults in her life into naming Collins as her abuser. But Young's expert opinion centered on whether children have the sophistication to lie about having been sexually abused in the first place, not whether they lie about the identity of the perpetrator. Indeed, during cross-examination, Young made it clear she wasn't opining on whether a child could be influenced but whether children can craft a lie of their own volition. Simply put, Young's testimony in this regard didn't refute Collins's theory of defense.

¶ 75 Second, Young's testimony didn't directly refute evidence from Collins's own expert. *See People v. Casias,* 2012 COA 117, ¶¶ 73-75 (where experts didn't directly dispute one another's testimony, the case was not "sharply disputed" and therefore, error in admitting expert testimony was harmless). Collins called Dr. Esplin to testify how children can be influenced to wrongfully name someone as their abuser. Dr. Esplin's expert opinion was not refuted by Young's expert opinion.

¶ 76    Third, Young's testimony was brief.  The trial lasted four days and included the testimony of several experts.  Additionally, the prosecutor didn't even mention Young's testimony related to children's sophistication to lie in his closing argument.  *See Marsh v. People,* 2017 CO 10M, ¶ 42 (expert testimony didn't contribute to the verdict when the prosecutor didn't rely on the testimony during closing argument).

¶ 77    Therefore, we conclude that the testimony didn't "substantially influence the verdict or affected the fairness of the trial proceedings."  *Hagos,* ¶ 12.  Accordingly, its admission doesn't warrant reversal.

### D.    Sentencing

¶ 78    Finally, Collins contends, for the first time on appeal, that the mittimus must be amended.  We agree that the case must be remanded to correct the mittimus.

¶ 79    Prior to closing arguments in the case, the prosecution moved to dismiss the pattern charges.  The trial court struck the pattern language from count 2 — sexual assault on a child.  Without the pattern language, sexual assault on a child is a class 4 felony.  *See* § 18-3-405(1), (2), C.R.S., 2020.  But the mittimus still includes the

pattern language on count 2. The mittimus must be corrected to reflect the "true nature of the crime of which defendant was convicted." *People v. Malloy,* 178 P.3d 1283, 1289 (Colo. App. 2008).

¶ 80    Accordingly, we remand the matter to the trial court with directions to correct count 2 of the mittimus to reflect a conviction for sexual assault on a child under section 18-3-405(1), (2), a class 4 felony. *See* Crim. P. 36 (clerical mistakes in judgments may be corrected by the court at any time).

### III.    Conclusion

¶ 81    For the reasons set forth above, the judgment and sentence are affirmed. The case is remanded for correction of the mittimus.

JUDGE J. JONES and JUDGE GOMEZ concur.